## UNITED STATES v. STEINBERG.
### No. 29.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1938.

Charles Eno, of New York City (Morton Milman, of New York City, of counsel) for appellant.

Lamar Hardy, U. S. Atty., of New York City (Leon E. Spencer, Ass't. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The defendant appealed from a "final order and judgment * * * entered on the 15th day of February, 1936, which in substance denied his motion to vacate or modify the default judgment entered in the above entitled action on October 4, 1937". He prayed that "said order and judgment may be reversed and the defendant's motion aforementioned granted". The facts are as follows: the Treasury had large tax claims against the defendant which in April, 1929, he offered to compromise for $10,000, paying down $2500 at the time. In March 1931 he changed his offer for the balance to a bond for $7500, payable in installments: $416.78 on April 1, 1931, and $416.66 monthly thereafter until the whole amount was discharged. The Commissioner finally approved this in October, 1931, and on October seventh the defendant paid the first two installments, and one more on the fifteenth. He was in arrears for four installments on November first, and never at any time thereafter got abreast of his payments. By January twelfth, 1934, all the installments being more than

a year overdue, he had paid $4166.72, leaving eight installments outstanding—$3333.28. The plaintiff brought suit on the bond on that day, but kept extending the time to answer until January ninth 1935, during which period the defendant paid five more installments. Later he paid $200 on April seventeenth 1935; $216.66, on September eleventh, 1935; and $216.66 on January twenty-second, 1936. It is clear from their amount that all these payments except the last three were intended to discharge one or two installments; the correspondence of figures alone proves this. There might be some question about the payment of $200 on April seventeenth, 1935, if it stood alone, but, following the others as it did, and itself followed 'by the exact difference between it and an installment, the intent as to it also is apparent; as it is in the case of the payment of January twenty-second, 1936. So far as appears, all these were accepted without reservation. On October seventeenth, 1937, the plaintiff, being unwilling to wait any longer, moved for judgment by default in the sum of $1450.89, made up of $616.66 of principal admittedly due, and $834.23 interest, calculated both upon the unpaid principal from the time it fell due, and upon the delays in payment of the earlier installments. It served a proposed judgment in that amount upon the defendant, and he answered by affidavit, protesting against the award of any interest for delays in the payment of the installments paid, on the ground that by accepting the principal the plaintiff lost any right to interest. The judge overruled this objection and entered judgment upon October fourth, 1937, for the full amount. On November twenty-sixth, 1937, and while therefore the court might still have vacated or modified the judgment under the local rule, the defendant moved before another judge to modify the judgment by allowing him to file an answer which claimed the same deduction. He was again unsuccessful, the second judge ruling, first, that the earlier ruling was res judicata, or at least "the law of the case"; and next, that on the merits the plaintiff was right anyway. The defendant then appealed from the order entered upon this decision on February fifteenth, 1938, in the words which we have quoted at the outset.

The first question is as to our jurisdiction; the plaintiff argues that there can be no appeal from the order refusing to modify the judgment. We shall not pass upon that question, because if the appeal be exactly limited to the words chosen, there is much doubt whether the order was not right. This would certainly follow, if the second judge was obliged to follow the ruling of the first, for there could be no error in a ruling which the law compelled: in that event the defendant's only relief was to appeal from the judgment, and thereby to challenge the ruling of the first judge. In Commercial Union of America v. Anglo-South American Bank, 2 Cir., 10 F.2d 937, we laid it down that it was an error for a second judge not to follow an earlier ruling of another judge made in the same case. Whether that is any invariable and unyielding rule, rather than a practice, usually desirable, we might wish to reconsider, if it became necessary; indeed, we have already twice had occasion to notice its limitations. Cherry v. Howell, 2 Cir., 66 F.2d 713, 715; Potts v. Village of Haverstraw, 2 Cir., 93 F.2d 506, 509. However, in the case at bar we shall assume arguendo that the second judge was bound to follow the first; and if so, the appeal must bring the first ruling before us, if the defendant is to have any relief. True, the point was raised in a somewhat irregular way before the first judge since the defendant had not answered, but apparently the plaintiff did not object to the procedure; and if the appeal brings up the judgment at all, we shall ignore that feature of the case. At least the appeal was in season, for the motion to modify the judgment extended the time so long as it remained pending. Brockett v. Brockett, 2 How. 238, 11 L.Ed. 251; Washington Railroad Co. v. Bradley, 7 Wall. 575, 19 L.Ed. 274; Memphis v. Brown, 94 U.S. 715, 24 L.Ed. 244; Kingman & Co. v. Western Manufacturing Co., 170 U.S. 675, 678, 18 S.Ct. 786, 42 L.Ed. 1192; Morse v. United States, 270 U.S. 151, 154, 46 S.Ct. 241, 70 L.Ed. 518. The only question is whether, because of its form, it reached the judgment at all. Verbally of course it did not, but it appears to us that the error was one of those formal mistakes which do not "affect substantial rights", and which we are empowered, and indeed directed, to disregard. Section 391, Title 28, U.S.Code,

28 U.S.C.A. § 391. We hold therefore that upon this appeal we may reconsider the original judgment, and we proceed to the merits.

▮ The general rule is that payment of principal forfeits interest, unless the obligor has expressly promised to pay it. Stewart v. Barnes, 153 U.S. 456, 14 S.Ct. 849, 38 L.Ed. 781; Pacific Railroad Co. v. United States, 158 U.S. 118, 15 S.Ct. 766, 39 L.Ed. 918; Rice v. Eisner, 2 Cir., 16 F.2d 358, 361. Did it make any difference that the bond was payable serially and that all the payments were made at times when several installments were past due? So far as the obligor's intent went, this presents no difficulty, as we have already said: it might have done so, if the payments had not shown their destination on their face, but they all did. A highly formal question might also be raised, arising out of the usual statement of the doctrine that the interest—the "incident"—should not survive the principal—the substance. Should we apply this distributively, so to speak—treating all interest grown due upon one installment as an "incident" only to that installment: or should we consider the continued obligation to pay any installment of principal sufficient to sustain the interest upon other installments already paid? It is difficult to be sure how to answer this, because it is difficult to know the reason for the doctrine anyway: perhaps it was due to courts' desire to favor compromises; perhaps it was merely nominalistic scholasticism. Even if it be the second, we are justified in imposing formal consistency upon it: at least it bears a rational form, and it seems to us irrational to consider interest upon a paid installment as an "incident" to other installments on which it is not calculated, and which carry interest of their own as damages for default in their payment.

▮ No other objections are suggested to us and we can think of none. It is true that the bond was given to compromise taxes, and that when as here the statute itself awards interest, the obligee may accept the principal and then sue for interest. Girard Trust Co. v. United States, 270 U.S. 163, 46 S.Ct. 229, 70 L.Ed. 524. But we do not think that the original nature of the duty compromised pervaded the bond, or colored the resulting rights and duties. The very purpose of the settlement was to release the taxes and to substitute the bond in their place. Whatever were the usual incidents of the substitute, the obligee accepted them unless it stipulated otherwise. We need not say whether if the plaintiff had so stipulated, that is to say, had reserved its right to interest when it accepted the payments, the same result would follow: the books are at odds on the point, but here there is no suggestion of such a reservation.

Nothing remains, therefore, so far as we can see, but the question whether the United States is bound by its acceptance of the installments like an individual. If the bond had promised interest, it might indeed be argued that no official had authority to release the obligor, even for a consideration, if there had been one. But, as we have said, there was no promise to pay interest; the law forfeited it, ex proprio vigore, because of the acceptance of the principal, and quite independently of the obligee's consent, or even of its knowledge of that consequence. That being true, acceptance of payment by any official of the United States having authority so to accept, imposed upon it the same results as though he had been the agent of an individual. Cooke v. United States, 91 U.S. 389, 398, 23 L.Ed. 237; Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 78 L.Ed. 1434; Perry v. United States, 294 U.S. 330, 351, 352, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335. If so, it follows that the award of interest was wrong, and that the judgment should have been confined to $616.-66, with interest thereon from the date when it was due.

Judgment modified as above.