ROYAL INDEMNITY CO. *v.* UNITED STATES.

No. 817.   Argued May 7, 1941.—Decided May 26, 1941.

290

*Mr. Harry S. Hall,* with whom *Mr. Nathaniel E. Wheeler* was on the brief, for petitioner.

*Mr. Edward J. Ennis,* with whom *Assistant Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Lee A. Jackson* were on the brief, for the United States.

MR. JUSTICE STONE delivered the opinion of the Court.

A collector of internal revenue, who had accepted a surety bond filed with him by a taxpayer to accompany his claim for abatement of income tax, consented to termination of all liability upon the bond and surrendered it before its obligation was fully satisfied. The questions for decision are whether the collector had power to release the obligation of the bond and, if not, whether the United States is entitled to interest on the amount of its claim against the surety.

Upon the Commissioner's assessment in 1920 of additional income taxes in the sum of $29,128, asserted to be due from the taxpayer for 1917, the taxpayer filed a claim for abatement of the assessment, and to secure suspension of collection of the tax, executed a bond to the

collector in the sum of $38,000 with petitioner as surety, conditioned upon payment on May 2, 1923, of the tax with interest. The Commissioner allowed the claim in abatement in part but rejected it to the extent of $8,223.38, on which interest had then accrued in the sum of $4,169.07. On demand of the Commissioner on August 5, 1926, for the principal amount of the tax with interest to the date of demand, petitioner paid only the principal amount of the tax to the collector by draft of December 17, 1926, bearing the notation on its face that it was in full payment of the tax and of all liability on the bond. The collector collected the draft and surrendered the bond to petitioner with the statement that all liability on it had terminated.

In the present suit on the bond the District Court held that the collector was without authority to release the bond and gave judgment for the sum of $4,169.07, found by the Commissioner to be the interest on the unpaid tax to the date of the rejection of the claim for its abatement, but refused to allow interest accruing subsequent to that date. On appeal the Circuit Court of Appeals ruled that, under § 370 of the New York General Business Law, interest at six per cent. should be added to the unpaid balance found to be due on the bond, and modified the judgment accordingly. 116 F. 2d 247. We granted certiorari April 7, 1941, because of the importance of the questions presented, and of a conflict of the decision below with that of the Circuit Court of Appeals for the Third Circuit in *Heinemann Chemical Co.* v. *United States*, 92 F. 2d 302.

It is not denied that the collector had authority to accept the bond, that it created a new cause of action distinct from that on the taxpayer's obligation, and that, if it has not been released, the United States has authority to sue upon it, see *United States* v. *John Barth Co.*, 279 U. S. 370; *Gulf States Steel Co.* v. *United States*, 287

U. S. 32; *United States* v. *Wolper,* 86 F. 2d 715; *United States* v. *Oswego Falls Corp.,* 113 F. 2d 322. And it is conceded that, as the bond was conditioned on the payment of the taxes with interest, petitioner is indebted to the Government upon it for the amount of the interest which had accrued at the time of the rejection of the claim in abatement. See *Botany Worsted Mills* v. *United States,* 278 U. S. 282; *Hughson* v. *United States,* 59 F. 2d 17, 19; *United States* v. *Steinberg,* 100 F. 2d 124, 126. Respondent's contentions are that the balance of interest then due was released by the collector and that in any case it was not bound to pay interest on that balance.

Power to release or otherwise dispose of the rights and property of the United States is lodged in the Congress by the Constitution. Art. IV, § 3, Cl. 2. Subordinate officers of the United States are without that power, save only as it has been conferred upon them by Act of Congress or is to be implied from other powers so granted. *Whiteside* v. *United States,* 93 U. S. 247, 256–257; *Hart* v. *United States,* 95 U. S. 316, 318; *Hawkins* v. *United States,* 96 U. S. 689, 691; *Utah Power & Light Co.* v. *United States,* 243 U. S. 389, 409; *Wilber National Bank* v. *United States,* 294 U. S. 120, 123–124; cf. *United States* v. *Shaw,* 309 U. S. 495, 501; *Ritter* v. *United States,* 28 F. 2d 265; *United States* v. *Globe Indemnity Co.,* 94 F. 2d 576. Collectors of internal revenue are subordinate officers charged with the ministerial duty of collecting the taxes. R. S. § 3183, *Erskine* v. *Hohnbach,* 14 Wall. 613, 616; *Harding* v. *Woodcock,* 137 U. S. 43, 46; *Moore Ice Cream Co.* v. *Rose,* 289 U. S. 373, 380, 381. There is no statute in terms authorizing them to remit taxes, to pass upon the claims for abatement of taxes, or to release any obligation for their payment. Only the Commissioner, with the consent of the Secretary of the Treasury, is authorized to compromise a tax deficiency for a sum less than

the amount lawfully due. R. S. §§ 3220, 3229, 26 U. S. C. 1661; 45 T. R., Art. 1011 (1918 Act); *Botany Worsted Mills* v. *United States, supra*, 288; *Loewy & Son* v. *Commissioner*, 31 F. 2d 652, 654.

There is thus no basis in the statutes of the United States for implying an authority in a collector to release a bond for the payment of the tax which the Commissioner alone is permitted to reduce by way of compromise when the Secretary of the Treasury consents. *Heinemann Chemical Co.* v. *United States, supra*, and *Brewerton* v. *United States*, 9 F. Supp. 503, to the contrary, plainly rest upon a misapplication of the ruling in *United States* v. *Alexander*, 110 U. S. 325, which sustained the release of a bond for taxes by the Secretary of the Treasury which had been specifically authorized by an Act of Congress.

The District Court rejected the Government's claim for interest upon the balance found due upon the bond as a demand for interest on interest, which has generally been held not to be an appropriate measure of damages for the delayed payment of interest alone. See *Cherokee Nation* v. *United States*, 270 U. S. 476, 490. In any case, it thought that the allowance of interest would be inequitable because of the collector's return of the bond to petitioner and the Government's delay in bringing the suit. But, as the Court of Appeals held, the obligation of petitioner to pay the interest accrued on the principal amount of tax under the applicable provisions of the Revenue Act was not damage assessed against petitioner for its nonpayment of interest. Petitioner's obligation was contractual to pay an amount found to be due from the taxpayer, and the suit against it is for a debt *ex contractu*, due and owing in conformity to the terms of the bond. See *United States* v. *John Barth Co., supra; Gulf States Steel Co.* v. *United States, supra.*

A suit upon a contractual obligation to pay money at a fixed or ascertainable time is a suit to recover damage

for its breach, including both the principal amount and interest by way of damage for delay in payment of the principal, after the due date. And in the absence of any controlling statutory regulation the trial court is as competent to determine the amount of interest for delay as any other item of damage. *United States* v. *United States Fidelity Co.*, 236 U. S. 512, 528; *Young* v. *Godbe,* 15 Wall. 562, 565; *Maryland Casualty Co.* v. *United States,* 76 F. 2d 626; *United States* v. *Wagner,* 93 F. 2d 77; *United States* v. *Hamilton,* 96 F. 2d 878; *Massachusetts Bonding & Ins. Co.* v. *United States,* 97 F. 2d 879, 881.

But the rule governing the interest to be recovered as damages for delayed payment of a contractual obligation to the United States is not controlled by state statute or local common law. In the absence of an applicable federal statute, it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due. *Board of County Commissioners* v. *United States,* 308 U. S. 343, 350, 352; *Young* v. *Godbe, supra,* 565; cf. *Billings* v. *United States,* 232 U. S. 261, 284, *et seq.*

The present suit is at law for the recovery of an amount due and owing, which petitioner has contracted to pay. To such a case, equitable rules relating to interest recoverable in suits for an accounting, or for recovery on quasi-contractual obligations arising from payment of money by mistake, are inapplicable. *United States* v. *United States Fidelity Co., supra,* 528; cf. *Redfield* v. *Ystalyfera Iron Co.,* 110 U. S. 174, 176; *United States* v. *Sanborn,* 135 U. S. 271, 281; *Redfield* v. *Bartels,* 139 U. S. 694, 702. Here, responsibility for delay in payment rests quite as much upon the debtor, who is chargeable with knowledge of its own obligation and the breach of it, as upon the creditor. And in the meantime the debtor has had the use of the money, of which its default has de-

prived the creditor. Interest upon the principal sum from the date of default, at a fair rate, is therefore an appropriate measure of damage for the delay in payment. *United States* v. *United States Fidelity Co.*, *supra*, 528; *Massachusetts Bonding & Ins. Co.* v. *United States, supra, United States* v. *Wagner, supra; Maryland Casualty Co.* v. *United States, supra.* While the New York statute fixing the rate of interest is not controlling, the allowance of interest does not conflict with any state or federal policy, and we think that, in the circumstances of this case, a suitable rate is that prevailing in the state where the obligation was given and to be performed. See *Young* v. *Godbe, supra,* 565; *Board of County Commissioners* v. *United States, supra,* 352.

*Affirmed.*

MR. JUSTICE BLACK, dissenting:

I agree with the Court's judgment that the Collector of Internal Revenue did not have power to release a taxpayer from his obligation to pay, but I am unable to agree with the Court's conclusions on the question of interest. The contract on which the Government's suit rests contained no provision for interest. The state's interest law, according to the holding of the Court, is not controlling. Congress has enacted no law requiring payment of interest and fixing an interest rate on contracts guaranteeing tax payments. Nevertheless, this Court now requires that interest be paid—a judicial requirement which under similar circumstances has been frankly described as "judicial law-making." *Board of County Commissioners* v. *United States,* 308 U. S. 343, 350.

Were the question an open one, I would be reluctant to acquiesce in holding that federal courts, in the absence of statutes, could or should assume the power to fix interest in such a case. But, granting that we have the power to take this step, the rate of interest to be charged

is from necessity an element of the legislative and policy power thus exercised, and that rate must therefore be determined by the Court. The rate fixed in this case is 6%. Resolution as to the amount is rested in part at least on New York's legislative rate. The inference is that a different rate might apply to contracts guaranteeing tax payments made in other states. For it is well known that interest rates fixed by state legislatures are not uniform but vary in amount.

Since in prescribing interest and fixing an interest rate we are passing upon questions of public policy, not marked at all by definite legislative boundaries, I find it difficult to agree to the result here for two reasons: (1) Unless the rate fixed is to be considered in the nature of a penalty, 6% seems very high. A smaller rate would appear to come nearer to harmonizing with fair and equitable interest exactions. (2) I am of opinion that since our "judicial law-making" is and must be national in its scope, the law which we adopt fixing a rate of interest for transactions such as that here involved should operate with uniformity throughout the nation. Federal taxpayers or their sureties should not be required to pay 6% in one state, 4% in a second, and 10% in a third. Such varying rates are not subject to criticism by federal courts if they govern local intrastate transactions subject to state law. But it seems to me that federal taxpayers and their sureties should be subject to the same interest rate without regard to the state rates governing purely local transactions within a particular area in which federal taxpayers happen to reside. To the extent that the Court's opinion indicates the possibility of such a variance among the states, I am compelled to disagree.

MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY concur in this opinion.