## UNITED STATES v. GUARANTY TRUST CO. OF NEW YORK (two cases).
### Petition of RECHT.

District Court, S. D. New York.

Feb. 19, 1945.

Mathias F. Correa, U. S. Atty., of New York City, Francis M. Shea, Asst. Atty. Gen., and Daniel M. Sandomire, Louis W. Bookheim, Lester S. Jayson, and Joseph K. Reichbart, Sp. Assts. to Atty. Gen., for the United States.

Davis, Polk, Wardwell, Sunderland & Kiendl, of New York City (Ralph M. Carson, William C. Cannon, Francis W. Phillips, and William R. Meagher, all of New York City, of counsel), for Guaranty Trust Co. of New York.

Paul J. Kern, of New York City, for Charles Recht.

RIFKIND, District Judge.

This is an application by an attorney to have the court determine the value of services rendered by him and to have the amount so determined declared to be a lien on the judgments to be entered in the above-entitled actions.

Petitioner is a lawyer who, since 1920, has represented various Russian interests in the United States. Sometime in 1921, he learned that an action had been commenced, in the New York Supreme Court, by P. V. Baranowsky Co., Ltd. v. Guaranty Trust Company, 156 Misc. 74, 280 N.Y.S. 427. He believed that the Soviet Government, then unrecognized by the United States, had an interest in the litigation. He advised the Soviet authorities and was

instructed to cooperate with the defendant in an effort to defeat Baranowsky's claim. To that end he rendered important services for his client, the Soviet Government. Discussions were had between him and his client concerning his compensation but they reached no agreement and the subject was deferred for later consideration.

In April, 1933, the petitioner served upon the parties to that litigation a motion for leave to intervene on behalf of the Union of Soviet Socialist Republics as party plaintiff. The motion was denied and no appeal from the order entered thereon was ever taken. The trial of the Baranowsky case resulted in a disagreement of the jury. While preparations were under way for a retrial, petitioner, on behalf of his client, negotiated with the defendant concerning a settlement of the interest of Soviet Russia in the litigation in the event Baranowsky was defeated. The terms of such a settlement, apparently, were fairly well worked out but were not formally accepted. By the Litvinov Assignment of November 16, 1933, the Soviet Government transferred its claims to the United States and the negotiations came to an end.

The petitioner alleges that "prior to said Litvinoff Assignment, it was the intent of the parties that, upon consummation of the settlement between Guaranty Trust Company and the Government of the U. S. S. R. above referred to, that petitioner was to be compensated for his services on the basis of quantum meruit from the fund paid in settlement, by consent of both parties". Subsequently, the United States, as assignee under the Litvinov Assignment, commenced the above-entitled actions to recover inter alia the same bank balance that Baranowsky unsuccessfully sought to reach. (Judgment in the Baranowsky case was ultimately entered for the defendant.) The actions prosecuted by the United States were consolidated for trial with another action brought by the receivers, appointed by the New York Supreme Court, of the assets in New York of Russo-Asiatic Bank. In all the actions Guaranty did not appear as stake-holder; it denied liability.

The petitioner first founded his claim on Section 475 of the Judiciary Law of New York, Consol.Laws, c. 30. In a later brief he suggested that, in part, his claim rested upon non-statutory, equitable grounds. For several independent reasons petitioner cannot prevail.

1. Since his claim is and must be founded on Section 475 of the New York Judiciary Law, Gregory v. Pike, 1 Cir., 1895, 67 F. 837, 843, he must bring himself within the terms of that statute. Petition of Nathan, 1942, 178 Misc. 226, 33 N.Y.S.2d 612. That, he has failed to do. Even if it be assumed that the application for leave to intervene in the Baranowsky case, which was denied, constitutes the commencement of an action (which I doubt, cf. N.Y., Civil Practice Act, §§ 114, 218) that action resulted in a dismissal; and thereby any lien which petitioner may have had necessarily died. In re Cooper, 1943, 291 N.Y. 255, 261, 52 N.E.2d 421.

2. Whether the assertion of the lien be deemed a claim against the United States or against Soviet Russia, in either event, enforcement is precluded by the sovereign immunity of the parties. Hewitt v. Speyer, 2 Cir., 1918, 250 F. 367; United States v. Alabama, 1941, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327; Maricopa County, Ariz v. Valley Nat. Bank, 1943, 318 U.S. 357, 63 S.Ct. 587, 87 L.Ed. 834. See also Recht v. United States, 1942, 95 Ct.Cl. 741.

It follows that the petition must be denied.

### Supplemental Opinion.

This memorandum is supplementary to the opinion heretofore filed in these causes and is limited to the question of interest to which the plaintiff is entitled.

1. In calculating interest on Russo-Asiatic dollar deposits for the period prior to the date of breach I have given effect to the provisions of the Banking Act of 1933, § 11(b), 12 U.S.C.A. § 371a, prohibiting the payment of interest by member banks of the Federal Reserve System on demand deposits. The proviso in this section which excepts contractually established interest rates does not, in my opinion, apply to the Russo-Asiatic deposits, which were open as to time, under the circumstances detailed in the previous opinion.

2. I have calculated interest after the breach from the date the actions were commenced, no prior demand having been proved. The plaintiff advances two earlier alternative dates: (1) the date of the defendant's refusal to pay on demand of the refugee directors; (2) the date of the acquisition of the claims by the United States through the Litvinov Assignment. Neither of these positions is, in my judg-

ment, valid. The demand of the refugee directors does not rise to the dignity of a transaction "valid when entered into", Guaranty Trust Company v. U. S., 1938, 304 U.S. 126, 140, so as to be given effect after recognition of Soviet Russia, for the purpose of starting an interest liability in favor of the United States, especially when the claim of the United States is incompatible with the claim asserted by the refugee directors. Nor can the refusal to pay on demand of the refugee directors justify the contention of the United States that, when it acquired the claims, a demand was futile, Tillman v. Guaranty Trust Company of New York, 1930, 253 N.Y. 295, 171 N.E. 61. Recognition of Russia and the execution and delivery of the Litvinov Assignment were major events full of significance. From the fact that the directors' demand was refused prior to them the inference may not be drawn that it would again be refused if made by the United States after their occurrence.

 3. The final question is concerned with the rate of interest after the commencement of the actions. Royal Indemnity Co. v. United States, 1941, 313 U. S. 289, 296, 61 S.Ct. 995, 997, 85 L.Ed. 1361, established that "the rule governing the interest to be recovered as damages for delayed payment of a contractual obligation to the United States is not controlled by state statute or local common law." Consequently, this court is not bound by New York Civil Practice Act, Section 480, or New York General Business Law, Consol. Laws, c. 20, § 370. "And in the absence of any controlling statutory regulation the trial court is as competent to determine the amount of interest for delay as any other item of damage." Ibid.

The rate established by the New York statute is one of the criteria the court may apply, but it is not conclusive. Greenberg v. Arsenal Building Corporation, 2 Cir., 1944, 144 F.2d 292, 294, which allowed 6% interest in an action arising under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., and where jurisdiction was not founded on diversity, did not say that the court was bound by the New York statute.

In considering the rate of interest to be recovered for damages for the delay in payment in this case, which is an action at law for the recovery of a bank deposit, "equitable rules" are inapplicable. Royal Indemnity Co. v. United States, su-

pra, 313 U.S. at page 296, 61 S.Ct. 995, 85 L.Ed. 1361; Board of Commissioners v. United States, 1939, 308 U.S. 343, 352, 60 S.Ct. 285, 84 L.Ed. 313. The application of "legal rules" suggests that the rate of interest employed should be compensatory and not punitive. Judicial notice may well be taken of the fact that during the entire period of time herein involved, from 1934 to the present, interest rates prevailing in the market were below 6%. How much below that rate, is a question which cannot be answered with precision. It is my conclusion that in this case a 4% rate is fairly compensatory. This conclusion I reach not on the theory of exercising discretion, nor by giving effect to equities, but on a finding that the 4% rate will compensate the plaintiff for the damages which it has suffered by reason of the delay in payment.