UNITED STATES of America,
Plaintiff-Appellant,

v.

SEABOARD SURETY COMPANY and
Dadourian Export Corporation,
Defendants-Appellants,

and

Consolidated Cordage Corporation,
Defendant.

No. 64, Docket 27877.

United States Court of Appeals
Second Circuit.

Argued Oct. 13, 1964.

Decided Dec. 10, 1964.

1

**2**

Stephen Charnas, Asst. U. S. Atty., Southern Dist. of New York (Robert M. Morgenthau, U. S. Atty., Arthur M. Handler, Andrew T. McEvoy, Jr., Asst. U. S. Attys., on the brief), for plaintiff-appellant.

Richard K. Gregory, New York City, for defendants-appellants.

Before WATERMAN, MOORE and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

This is an appeal by Seaboard Surety Company (Surety) from a judgment of the United States District Court for the Southern District of New York, Dudley B. Bonsal, District Judge, entered on July 28, 1962, for $13,582.03 damages and $2,080.65 interest and costs in favor of the plaintiff, United States (the Government); Dadourian Export Corporation also appeals from that part of the judgment which dismissed its $10,000 counterclaim against the Government; and the Government appeals from the interest award.

The facts are not disputed by the parties. By the terms of a contract awarded to the Consolidated Cordage Corporation (Consolidated) in May 1954, Consolidated was to deliver to the Government 2,689 coils of manila rope at $.27 per pound, payment to be made on a gross weight basis. The contract specifications provided that the rope was to contain not less than 10% and not more than 15% of lubricant, that the rope was to be tested for lubricant content and other characteristics, and that it could be rejected if more than one sample was defective. Consolidated tendered the rope on August 16, 1955 and on October 15, 1955 an independent testing firm undertook a series of tests on 35 samples. The test report showed that the rope contained excess lubricant resulting in added weight (and inflated cost), and that one sample had snapped under less tension than the required breaking strength minimum. Additional tests as to breaking strength compliance were conducted within the next two months, at the end of which time the Government informed Consolidated that the rope was rejected for failure of one sample to meet the required breaking strength and of seven samples to meet the lubricant content. Appeal was taken by Consolidated to the Armed Services Board of Contract Appeals (ASBCA) which upheld the Government's rejection of the rope on the ground that the tests showed excessive lubricant; ASBCA specifically stated, however, that the failure of the one sample to comply with the minimum breaking strength was insufficient in and of itself to warrant rejection. The Government officially terminated the contract on April 4, 1956, and over three years later, on December 9, 1959, made demands on Surety, which was the surety on a performance bond in the amount of $17,000. Consolidated is now defunct and Dadourian is its successor in interest with regard to this contract.

The gist of Surety's principal argument is that the administrative determinations culminating in the Government's rejection of the contract were arbitrary, capricious and contrary to the evidence and the law. We do not agree. Under 41 U.S.C. § 321 the decision of the ASBCA is final unless it is "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." None of these grounds for reversal are present here; the initial test

showed that the lubricant content was excessive and that was a sufficient basis for rejection under the express terms of the contract. Although the Government might have made allowances for the weight dilution instead of terminating the contract altogether (which might have appeared to be the more equitable solution under the circumstances), this court cannot now reverse the decision of the ASBCA merely because it might prefer the other course. The record reveals that the lubricant content was in fact excessive, and no error asserted by Surety weakens that finding.

Compare United States v. Hamden Cooperative Creamery Co., 297 F.2d 130 (2 Cir. 1961), where this court refused to overturn a decision of the Contract Disputes Board because the evidence before the Board was substantial, "[S]uch relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Similarly the ASBCA had evidence before it which conclusively showed that the rope contained excessive lubricant; it had a sound basis for concluding that the contract had been breached. The claims made by Surety (that all the break-strength test results were not properly before the Board, that the Bureau of Ships official was not made subject to cross-examination, etc.) are not sufficient to upset the finding of breach because of the excess lubricant.

■ Surety also argues that the Government waived any breach of the lubricant condition when, with knowledge of the initial test results, the Inspector of Naval Material, New York, ordered (or permitted) at Consolidated's expense additional breaking-strength tests. However, there is no showing of waiver here. Permitting additional testing on other qualities of the goods is not conclusive of any decision to relinquish the right to reject on the ground of excess lubricant. Conceivably, exceptional performance in other respects in the further tests might have induced such a waiver, but we cannot find from the mere ordering of further tests a relinquishment of the right to insist on the contract specifications.

The remaining question is whether the district court correctly computed the amount of interest—should the interest be determined from the time demand was first made on the surety, which is the time selected by the district court, or should it have been calculated from the time that demand was first made on the breaching party, Consolidated? (The difference between these two dates is more than three years so that the interest award would be substantially larger if the latter time were selected.)

■ Federal law governs interest determination. Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941).

"[T]he rule governing the interest to be recovered as damages for delayed payment of a contractual obligation to the United States is not controlled by state statute or local common law. In the absence of an applicable federal statute it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for nonpayment of the amount found to be due." 313 U.S. at 296, 61 S.Ct. at 997.

See also Swartzbaugh Manufacturing Co. v. United States, 289 F.2d 81, 84 (6 Cir. 1961).

■ Under federal law, the Government was entitled to have the interest computed from the time that demands were first made on Surety's principal. See Royal Indemnity, supra. Interest in the amount of $2,621.33 (6% interest on the $13,582.03 excess costs running from September 21, 1956 to December 9, 1959) should be added to the excess costs resulting in a subtotal of $16,203.36, which is the amount that Surety owed on the $17,000 bond as of the date that demand was made on Surety for payment. In addition, Surety owes the Government interest on this amount accruing to the date of judgment, or a total of $18,685.12. Interest in excess of the penal sum of the bond may be owing by the surety where

the interest results from the surety's default and not the principal's. Massachusetts Bonding & Ins. Co. v. United States, 97 F.2d 879, 881 (9 Cir. 1938). The judgment in favor of the United States may be modified by increasing the amount to $18,685.12 and as modified is affirmed. The judgment dismissing the counterclaim is affirmed.