James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

AMERICAN CAN COMPANY, DIXIE PRODUCTS, a Corporation, Defendant.

Civ. A. No. 2039.

United States District Court, W. D. Arkansas, Fort Smith Division.

Sept. 23, 1970.

Beverley R. Worrell, Regional Sol., Dept. of Labor, Atlanta, Ga., for plaintiff.

Bethell, Stocks, Callaway & King, Fort Smith, Ark., for defendant.

## OPINION

JOHN E. MILLER, Senior District Judge.

There is before the court defendant's motion filed September 17, 1970, under

Rule 12(h) (3) to dismiss for lack of subject matter jurisdiction and alternately for relief from judgment under Rule 60(b) and for rehearing under Rule 59. In the consideration of this motion and for a clear understanding of the issues, it is necessary to briefly refer to the record.

This suit was commenced December 10, 1966, and tried to the court on July 17–19, 1968. After a consideration of the issues and the evidence, the court entered a judgment on August 14, 1968, dismissing the complaint. There was an appeal from the judgment, and on March 30, 1970, the U. S. Court of Appeals for the Eighth Circuit reversed and remanded the case with directions to enter "an appropriate judgment in favor of the plaintiff." Shultz v. American Can Co. (8 Cir. 1970), 424 F.2d 356; sub nom. Wirtz v. American Can Co. (W.D.Ark. 1968), 288 F.Supp. 14. The mandate was filed May 21, 1970. On June 4, 1970, the Regional Solicitor of plaintiff wrote the attorneys for defendant and suggested that the parties ought to be able to agree on the amount of back time involved and offered the services of a compliance officer to meet with the defendant's representative for the purpose of liquidating the back pay. On June 8, 1970, the court wrote counsel and, after referring to the filing of the mandate, advised counsel that the court had been waiting for the parties to reach an agreement as to the identification of the various employees and the amounts due them for back wages. The court further stated:

"I think this is the duty of counsel and I see no reason why you cannot agree to the proper order to be entered under the mandate, and I suggest that you proceed and submit to me an approved precedent for the entry of final judgment."

On June 24, 1970, the Regional Solicitor forwarded a proposed precedent for judgment, and asked that it be entered forthwith leaving only the matter of computations for attaching to be furnished. On June 27, 1970, the attorneys for defendant advised the court that they seriously objected to the proposed judgment, and on July 3, 1970, forwarded to the court a proposed precedent for judgment in opposition to the provisions of the proposal submitted by the Regional Solicitor. The contentions of the parties were thoroughly briefed. The defendant vigorously contended that an injunction should not be granted and that interest should not be allowed on the back wages. The plaintiff, of course, contended that an injunction should be granted and that interest should be allowed. On July 30, 1970, the court filed its memorandum opinion, and on the same day entered a judgment holding:

(1) That the defendant had discriminated on the basis of sex contrary to §§ 6(d) (1) and 15(a) (2) of the Fair Labor Standards Act, as amended;

(2) Directed that defendant should forthwith equalize the wage rates.

(3) In paragraph 3 of the judgment the court held:

"Defendant shall proceed promptly to determine from its time and payroll records the amounts owing employees which have been withheld in violation of Section 6(d) (1) of the Act from June 11, 1965, up to the date their wage rate is equalized in accordance with this judgment, with interest at 6 percent per annum. Plaintiff shall make a representative available to assist in making the necessary computations. Such determination of amounts owing shall be approved by counsel for the parties, and shall be subject to the supervision of the court. The computations shall identify and name the affected employees and state the amount due each, and shall be attached hereto as Exhibit A within 30 days of the date of this judgment."

The court dismissed the portion of the complaint of plaintiff seeking an injunction.

No portion of the judgment was entered by consent of the parties, but in conformity to paragraph (3) the parties prepared and filed a statement (Exhibit

A) in full compliance with the order of the court, which the court approved on September 15, 1970. Exhibit A discloses that the sum of $126,342.66 is the total due the employees for back wages, and the interest on such wages amounts to $16,412.79.

Upon the filing of the motion now before the court, the court on September 18, 1970, wrote the Regional Solicitor of plaintiff and stated:

"I would like to dispose of this motion as soon as may reasonably be done. * * * In this connection, I know that you are busy, but I would like for you to make every effort to serve and submit brief within one week."

On the same date, Mr. Gerig, an attorney for plaintiff, called the court by long distance telephone, and he was advised that I had written the Regional Solicitor and that if plaintiff desired to object to the motion, said objections should be sent immediately. Later during the same day, September 18, the court, after reviewing the file and briefs heretofore submitted by the parties, wrote the Regional Solicitor as follows:

"In the opinion of the court it is not necessary for hearing on the motion or for the submission of additional briefs, and the court will proceed to determine the instant motion upon the present record, including the briefs and contentions of the parties heretofore mentioned, and since the motion must be acted upon prior to the expiration of the time for appeal from the original judgment, as provided by Appellate Rules 3 and 4, the court will decide the motion on or before September 25, 1970, and advise all parties of my conclusion."

The questions presented by the motion are more easily stated than answered.

The first question for determination is whether the court has jurisdiction of the subject matter.

Section 216(c) of the Act, which authorizes the Secretary, upon the filing of a written request by any employee claiming unpaid minimum wages or unpaid overtime, to bring an action in any court of competent jurisdiction to recover the amount of such back pay claim, contains an express jurisdictional limitation:

"Provided, that this authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled."

The defendant contends that §§ 216 and 217 are related parts of a comprehensive enforcement scheme and must, therefore, be read in pari materia. Specifically, the defendant argues that the novel question proviso of § 216(c) is also applicable to actions brought by the Secretary under § 217, and that the disposition of this action was dependent upon a resolution of several novel questions and that as a result this court is without jurisdiction of the subject matter.

It is unquestioned that the proviso contained in § 216(c) was designed by Congress to protect unwarned employers from incurring liability for back pay in a test case commenced by the Secretary under the Act. Wirtz v. Marino (1 Cir. 1968), 405 F.2d 938; Conference Report No. 1453, 2 U.S.Code Cong. and Admin.News, p. 2272, 81st Cong., 1st Sess., (1949). The proviso expressly withdraws subject matter jurisdiction from the courts where the Secretary's suit for back pay pursuant to employees' written authorization contains issues of law not finally settled by the courts.

It does in fact seem clear that §§ 216 and 217 are integrally related elements of a single enforcement scheme. Indeed, the 1961 amendment to § 217, allowing the Secretary to bring an action enjoining the withholding of unpaid minimum wages and overtime compensation on his own initiative, was expressly enacted to

overcome deficiencies in § 216. The legislative history of the 1961 amendments reflects the view of Congress that:

"Under the present provisions of the act, the Secretary of Labor has no authority to require the payment of minimum wages and overtime compensation not paid in compliance with the law, except where an employee requests that an action be brought by the Secretary of Labor. This limitation has impeded the Secretary in his efforts to enforce the act since many employees who have not been paid in compliance with the act are hesitant about requesting legal action against their employers. The bill therefore amends sections 16 and 17 of the act so as to establish a more effective method of enforcing an employee's rights by authorizing the Federal courts to order the payment of the actual amount of unpaid wages due an employee in injunction actions brought under section 17." Sen.Rep. No. 145, 2 U.S. Code Cong. and Admin.News, 87th Cong., 1st Sess. p. 1658 (1961).

Nevertheless, the proviso of § 216(c) was clearly intended to be a limitation upon the power of the Secretary to sue for back pay and the court's jurisdiction to entertain such suit. In Wirtz v. Marino, supra, the court interpreted the novel question proviso as follows:

"[Congress] did not wish to give the Secretary power to instigate or conduct litigation to obtain retrospective payments from employers who lacked adequate warning from existing, settled authority. Employers were not to be exposed to the powers of the government as a collection agency for liability innocently incurred, if indeed it was incurred, when the law's applicability to them was open to legitimate doubt." 405 F.2d at 942.

It would clearly be illogical to protect an unwarned employer from liability for back pay in a test case involving novel legal questions brought by the Secretary pursuant to an employee request under § 216(c), but to deny such equitable protection to the very same unwarned employer when the Secretary brings an identical test case on his own initiative under § 217. This court, therefore, holds that the novel question proviso contained in § 216(c) is equally applicable to § 217.

It is also true that the disposition of this case by the Court of Appeals involved the resolution of issues of law which at the time this case was filed were clearly unsettled.

First, the Court of Appeals, following the Third Circuit Court of Appeals, in Shultz v. Wheaton Glass Co. (3 Cir. 1970), 421 F.2d 259, cert. den. 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64, construed the word "equal" as used in the Act to mean substantially equal as opposed to substantially identical. This construction of one of the essential elements of the Act enable the Court of Appeals to equate the work of the night shift employees with that of the AM-PM employees in spite of the court's finding that the night shift operators performed a function not performed by the operators on the AM-PM shifts. American Can at 424 F.2d 358.

Second, the Court of Appeals apparently held that all night shift operators were required to uniformly expend the same amount of additional effort over and above the AM-PM operators in order to justify the wage differential.

Each of these issues of law was novel when the action was filed, and each became settled insofar as this court is concerned only by the decision of the Court of Appeals in American Can. The question which obviously presents itself is whether the date the action was commenced or a later date is controlling for the limited purpose of applying the novel question proviso. The instant case provides persuasive argument that the issue of whether novel questions are involved in a § 217 action must be answered as of the time jurisdiction is questioned. It would, for example, constitute an exercise in futility to dismiss an action in which substantial questions

of law, unsettled at the time of filing but resolved by precedent binding upon the trial court prior to disposition of the case, only to have the suit refiled by the Secretary and eventually concluded on its merits. Such procedure would constitute judicial wastefulness and would not be in keeping with the principle of finality and an orderly disposition of litigation. The lack of jurisdiction of subject matter may be raised at any time. Indeed, it is the duty of the court to determine the question before considering the merits. Evidently the Court of Appeals was of the opinion it had jurisdiction, and while it is questionable, this court will not in view of all the facts hold that it was or is without jurisdiction.

The next and final question is whether the defendant is entitled to relief under Rule 60(b) from the portion of the judgment which provides that the amount due for back wages shall draw interest at six percent per annum until paid and for a rehearing under Rule 59.

In view of the relief asked the rationale and the relationship of both Rules will be discussed and determined.

■ Rule 59 deals with new trials and amendment of judgments.

As heretofore stated, the judgment was entered July 30, 1970. No motion for a new trial was filed, nor was any other motion filed other than the one that is now before the court.

"Judicial error can be corrected by the district court on appropriate motion, such as a motion to alter or amend the judgment under Rule 59 (e), or a motion for a new trial under Rule 59(b), and the court may grant such relief on its motion. But in all these instances the motion must be made, or if the court acts on its own initiative it must do so, not later than 10 days after the entry of judgment. And these time periods are not subject to enlargement in the interest of finality, for a timely motion destroys the finality of judgment for purposes of appeal. A Rule 60(b) motion does not, however, affect the finality of a judgment, and hence does not operate directly to toll the time for appeal. Yet if the Rule is construed to authorize a motion for relief from a judgment because of judicial error, then an appeal will subsequently lie from a final decision on the motion for relief, and appeal time will have been indirectly extended, at least where the alleged judicial error involved in the appeal from the 60(b) decision is the same that could have been raised on appeal from the original judgment. On the other hand, why should not the trial court have the power to correct its own judicial error under 60(b) (1) within a reasonable time—which, as we subsequently point out, should not exceed the time for appeal—and thus avoid the inconvenience and expense of an appeal by the party which the trial court is now convinced should prevail? Although original 60(b) allowed relief, in an appropriate situation, on the basis of an error of law on the part of the moving party, it did not itself warrant relief on the basis of judicial error; and yet under the saving clause of original 60(b) relief from judicial error could be had by a bill of review if the error was an error of law apparent upon the record. While there is some judicial authority that may be contra, we believe that there should be sufficient flexibility in the Rules so that the district court has the power under 60(b) (1) to grant relief for error of law apparent, on motion made within a reasonable time." 7 Moore's Federal Practice, ¶ 60.22 [3], pp. 236–37.

The defendant is not entitled to relief under Rule 59 and a hearing would be of no avail.[1]

---

1. During the preparation of this opinion one of the attorneys for plaintiff invited the court to consider Weir v. United States (8 Cir. 1965), 339 F.2d 82, and Spurgeon v. Delta Steamship Lines, Inc. (2 Cir. 1967), 387 F.2d 358, in connection

Is the defendant entitled to and does the court have the authority to grant relief under 60(b) from the provision of the decree which provides for the payment of interest at six percent per annum on the amount of the back wages?

The applicable portions of Rule 60(b) (1), Fed.R.Civ.P., provides:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * *. The motion shall be made within a reasonable time, and for reasons (1) * * * not more than one year after the judgment, order, or proceeding was entered or taken. * * * Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

The original Rule 60(b) provided that relief might be granted a party or his legal representative "from a judgment, order, or proceeding taken against him through *his* mistake, inadvertence, surprise, or excusable neglect. * * * The 1946 revision of 60(b) deleted the qualifying phrase *his*, abolished for civil actions the old common law and equitable remedies and particularized the categories under which relief could be had. As a result of the deletion of the pronoun *his*, relief for mistake, inadvertence, etc., was extended to include not only the mistake of the moving party, but also the mistake of the adverse party, third persons, and even the court." 7 Moore's Federal Practice, 2d Ed., ¶ 60.22 [3], pp. 235–36.

The question whether the employees are entitled to interest was thoroughly briefed by counsel, as heretofore stated, before the decree was entered. The court was of the opinion that they were so entitled. Consequently the decree was drafted requiring the payment of interest.

■ The motion was filed within the time allowed for appeal from the judgment, Rules 3 and 4, Fed.Rules of Appellate Procedure, and was therefore filed in a reasonable time and does not unduly affect the sound principle of finality nor the general principle that 60(b) is not a substitute for appeal. "At the same time it infuses needed flexibility into our procedure and allows the district court to correct judicial error that must otherwise be corrected by appeal." 7 Moore's Federal Practice, 2d Ed., § 60(b), ¶ 22 [3], p. 238.

In 3 Barron and Holtzoff, Federal Practice and Procedure, § 1323, p. 395, it is stated:

"Relief from a final judgment, order or other proceeding rests in the sound discretion of the court guided by accepted legal principles. The discretion should ordinarily incline towards granting rather than denying relief, especially if no intervening rights have attached in reliance upon the judgment and no actual injustice will ensue. Equitable principles may be a guide in administering relief."

In State of Iowa v. Union Asphalt & Roadoils, Inc. (S.D.Iowa 1968), 281 F. Supp. 391, it is stated at page 398:

"The rule is to be liberally construed to accord justice."

The court may grant relief on its own motion.

"At least in a non-jury case, the action is taken 'within a reasonable time' if, as here, it is done before the time for appeal has expired. * * * Confined as it is to the time in which appeal from the final judgment may be taken, this holding has a double virtue. First, it does not circuitously extend the time for appeal. Second, it avoids the necessity for the anoma-

with the application of Rule 59. Neither of these decisions in any way militates

against the conclusion of the court relative to the application of Rule 59.

lous action suggested by Professor Moore out of an abundance of caution that a party 'take an appeal within proper time and also, within appeal time, move the district court for relief; and then ask the appellate court to authorize the district court to proceed and determine the motion.' Para. 60.22 [3] at p. 238. Overburdened courts, trial and appellate, should not have to squander precious time and resources in such artificial maneuvers where the Judge on his own and in time faces up to the error and corrects it by effective action." [2]

McDowell v. Celebrezze (5 Cir. 1962), 310 F.2d 43.

Since the court is convinced that it has the authority to grant relief in a proper case, we now turn to a consideration of whether the portion of the decree awarding interest is a substantive error.

Section 17 of the Act as amended, 29 U.S.C. § 217, grants jurisdiction to the district court " * * * for cause shown, to restrain violations of section 215 of this title, including in the case of violations of section 215(a) (2) of this title, the restraint of any withholding of payment of minimum wages * * found by the court to be due to employees under this chapter * * *." The statute does not provide for the recovery of liquidated damages for delay or for interest. The Supreme Court has, however, held that:

" * * * the failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest. Billings v. United States, 232 U.S. 261, 284–288, 34 S.Ct. 421, 425–427, 58 L.Ed. 596. For in the absence of an un-

2. Counsel for plaintiff also requested the court to consider Farmers Co-op El. Ass'n Non-Stock, Big Springs, Neb. v. Strand (8 Cir. 1967), 382 F.2d 224; Hartman v. Lauchli (8 Cir. 1962), 304 F.2d 431, and Hoffman v. Celebrezze (8 Cir. 1969), 405 F.2d 833, on the question whether relief can be granted under 60 (b).

In Strand, the question arose on the motions of defendant (appellant) for a directed verdict and for judgment n. o. v. and its 60(b) motion filed some four months after the entry of final judgment. The court held that the defendant was precluded from raising such issues because of the stipulation made at the trial that regulations contained in Exhibit 26 were in effect at the time of the accident; that parties are generally bound by stipulations voluntarily made and that relief from such stipulations is warranted only under exceptional circumstances.

In Hartman, one of the defendants appealed from an order denying his motion under Rule 60(b) to vacate the final judgment entered against him on Count 7 of the complaint. The judgment on that count was affirmed on appeal and the Supreme Court declined to review on certiorari. The district court denied the motion of defendant to vacate and set aside the final judgment in the case which was affirmed on appeal. The court stated that Rule 60(b) was not intended as a

substitute for a direct appeal from an erroneous judgment and that after the original judgment had been affirmed on Count 7, the district court, without the consent of the appellate court, could not disturb the judgment.

In Hoffman, the final judgment sought to be modified was entered Feb. 6, 1967. Four months later the Government filed a motion to modify the order by striking therefrom the words "at six percent interest." On Nov. 27, 1967, the trial court granted the Government's motion and amended its original order by deleting therefrom the words "at six percent interest." On appeal, the judgment of the district court was reversed on the ground that there was no adequate showing of exceptional circumstances and that the original order was prepared, agreed upon by counsel, and as so agreed entered by the court, which was one of the reasons for reversal. Also, the court indicated that the motion had not been filed in time and that under the circumstances of the case Rule 60(b) could not properly be invoked for the purposes of extending the time for appeal which had already expired at the time the motion was filed.

None of the cases are controlling on the question under consideration by the court and are not authority against the conclusion reached by the court on the question of the applicability of Rule 69(b).

equivocal prohibition of interest on such obligations, this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court. See, e. g., Royal Indemnity Co. v. United States, [313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361], supra; Board of Com'rs of Jackson County in State of Kansas v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313.

"As our prior cases show, a persuasive consideration in determining whether such obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed. And this Court has generally weighed these relative equities in accordance with the historic judicial principle that one for whose financial advantage an obligation was assumed or imposed, and who has suffered actual money damages by another's breach of that obligation, should be fairly compensated for the loss thereby sustained." Rodgers v. United States (1947), 332 U.S. 371, 373, 68 S.Ct. 5, 7, 92 L.Ed. 3.

■ It may therefore be stated as a general rule that where a statute creating a financial obligation is silent as to whether the obligation carries interest, the courts may in the exercise of their discretion award interest if justified by an appraisal of the intent of Congress in enacting the statute and by the relative equities between those benefited and those upon whom the obligation has been imposed. In Brooklyn Savings Bank v. O'Neil (1944), 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296, the Supreme Court held that it was improper to award interest under § 216(b) of the Act, because an employee could obtain liquidated damages thereunder and that interest and liquidated damages serve the same function. The Court stated at 324 U.S. 715, 65 S.Ct. 906:

" * * * Section 16(b) authorizes the recovery of liquidated damages as compensation for delay in payment of sums due under the Act. Since Congress has seen fit to fix the sums recoverable for delay, it is inconsistent with Congressional intent to grant recovery of interest on such sums in view of the fact that interest is customarily allowed as compensation for delay in payment."

Congress, however, included no liquidated damages provision in either § 216 (c) or § 217. In addition, when Congress enacted the 1961 amendments to the Act, it clearly indicated an intent to deny liquidated damages as compensation in a suit brought by the Secretary under § 217. In Conference Report No. 327, a statement by the managers of the amendments on the part of the House of Representatives, the authors stated:

"The committee of conference adopted provisions (secs. 16(b) and 17) contained in the Senate amendment but not in the House bill, dealing with enforcement of the minimum wage and overtime pay requirements of the act. Under these provisions, the Federal district courts would be authorized, in injunction actions brought by the Secretary of Labor, to issue court orders requiring employers to cease unlawful withholding of minimum wages and overtime compensation found by the court to be due to employees under the act. In such actions *only the minimum wages and overtime pay found due under the act may be awarded and no award shall be made of any additional amount as liquidated damages.*" (Emphasis supplied.) 2 U.S. Code Cong. and Admin.News p. 1713, 87th Cong., 1st Sess. (1961).

■ The court agrees that liquidated damages and interest serve the same function and may thus reasonably infer that Congress did not intend to award compensation for delay in payment of minimum wages and/or overtime compensation in actions brought by the Secretary, as opposed to those brought by employees of an offending employer.

■ A weighing of the equities also dictates that interest should not be allowed. There have, of course, been many instances in which employers have demonstrated a rather obvious lack of good faith in cases arising under the amended Act, primarily involving willful ignorance or obstinance in the face of unambiguous administrative rulings or settled case law. There are, on the other hand, many instances in which employers, acting in good faith and without adequate warning, are surprised to find themselves being sued for immense sums in retroactive wage payments, liability innocently incurred when the law's applicability to them was open to legitimate doubt.

In the early years of the Act, the granting of liquidated damages was mandatory in actions under § 216(b). Brooklyn Savings Bank v. O'Neil, supra. In 1947, Congress recognizing the possibility of good faith and surprise on the part of employers, enacted the Portal-to-Portal Act, 29 U.S.C. § 251 et seq., finding that:

" * * * the Fair Labor Standards Act of 1938, as amended, has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the result that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others; * * * (3) there would be created both an extended and continuous uncertainty on the part of industry, both the employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liq-

uidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payments to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in * * *."

Accordingly, Congress established defenses to such actions for back pay where the employer had no reason to know that he was in violation of the Act. Thus, good faith reliance on administrative rulings, 29 U.S.C. § 259, was made an absolute defense in an action to recover back pay and ordinary good faith conduct in the form of a reasonable belief on the part of an employer that his act or omission was not a violation of the Act was made a defense to claims for liquidated damages. 29 U.S.C. § 260.

Similar considerations apply in determining whether to award interest. This action primarily involved an issue of law which was novel at the time the suit was commenced, in 1966, and concerning which this court has only recently been provided with binding precedent. The Third Circuit Court of Appeals (Shultz v. Wheaton Glass Co., supra, reversing Wirtz v. Wheaton Glass Co. (D.N.J. 1968), 284 F.Supp. 23) and more recently the Eighth Circuit Court of Appeals (Shultz v. American Can Co., supra) have construed the word "equal" as used in the Act to mean "substantially equal" as opposed to "substantially identical." This construction of one of the essential elements of the Act is contrary to the meaning which might in good faith be inferred by an employer from a fair reading of the legislative history of the statute. See 108 Cong. Rec. pp. 14767 and 14771. The fact that the law as it applied to the defendant was unsettled for almost all of the four years this suit has been pending is clearly a factor bearing on the question of

good faith. Kelly v. Ballard (S.D.Cal. 1969), 298 F.Supp. 1301. Few employers could satisfy a test of good faith if required to correctly anticipate judicial precedent.

The court would also add that delay in the final presentation of the appeal to the Court of Appeals was caused by the Government. The case was pending in this court more than a year and a half prior to the date of the trial. The trial in this court was concluded on July 19, 1968, and soon thereafter the Government obtained a transcript. It requested and over. the objection of the defendant obtained a 50-day extension for filing the record on appeal. The Government's brief was due on February 12, 1969. It then requested and was granted a 30-day extension until March 14, 1969. This was followed by an additional 20-day extension until April 4, 1969. The Government's reply brief was due on June 30, 1969, but through a series of other extensions the date was finally set for September 15, 1969, an approximate 75-day extension, or a total delay of approximately six months. Finally, because of the Government's attorney being in Europe, the Government requested and was granted a one-month postponement of the oral argument. It is inequitable and unfair to permit such delays and then claim interest.

In accordance with the conclusions reached by the court judgment is being entered today overruling and denying those portions of the motion to dismiss plaintiff's suit for lack of subject matter jurisdiction and to rehear and reconsider the judgment and order pursuant to Rule 59; and granting that portion of the motion for relief from the operation of this court's judgment of July 30, 1970, insofar as it relates to the payment by the defendant of interest on the back wages found to be due, and striking from line 5 of numbered paragraph 3 of said judgment the words "with interest at 6 percent" and substituting therefor the words "with interest at 6 percent from May 21, 1970, until paid."