**UNITED STATES of America, Plaintiff-Appellee,**

v.

**EASTERN AIR LINES, INC., Glens Falls Insurance Company, Byron May, as President of Associated Aviation Underwriters, Defendants-Appellants.**

**No. 330, Docket 30264.**

United States Court of Appeals
Second Circuit.

Argued April 12, 1966.

Decided Sept. 19, 1966.

Lawrence W. Schilling, Asst. U. S. Atty., Robert M. Morgenthau, U. S. Atty., S. D. N. Y., Alan G. Blumberg, Asst. U. S. Atty., for plaintiff-appellee.

W. Glen Harlan, W. Guy McKenzie, Jr., Gambrell, Harlan, Russell & Moye, Atlanta, Ga., for defendants-appellants.

Before WATERMAN, FRIENDLY and ANDERSON, Circuit Judges.

WATERMAN, Circuit Judge:

The United States commenced suit on May 16, 1962, against appellants Eastern Air Lines, Inc., Glens Falls Insurance Company, and Byron May, as President of Associated Aviation Underwriters, seeking a declaratory judgment that, pursuant to the provisions of an aircraft lease between it and Eastern, it was entitled to substantially all the proceeds of an insurance policy on an aircraft Eastern had leased from the United States, which policy Eastern had purchased from Glens Falls and Aviation Underwriters. On December 29, 1949, over twelve years earlier, appellant-insurers had paid Eastern $380,000, the total insurance proceeds due under the policy. Eastern moved for summary judgment, maintaining that the government claim was inappropriate under the terms of the aircraft lease, and also on the ground that the claim was time-barred by the one year limitation clause in the insurance policy. On September 20, 1965, the district court granted appellants' summary judgment motion, but entered judgment against them in favor of the United States in the amount of $126,190.19, with prejudgment interest computed at 6% per annum from December 29, 1949.

The district court amended this judgment on November 29, 1965 by reducing the rate of prejudgment interest to 4%. From this judgment, as amended, the appellants have appealed.[1]

On appeal, appellants first maintain that the Government's claim for any part of the insurance proceeds is time-barred by the one year limitation clause in the insurance policy, and that their motion for summary judgment should have been granted in their favor. Alternatively, they maintain that the district court, if correct in awarding $126,190.19 to the United States, erred in requiring that they pay prejudgment interest on the $126,190.19. For reasons set forth hereafter we reverse the judgment of the court below as to appellant-insurers Glens Falls Insurance Company, and Byron May as President of Associated Aviation Underwriters, and affirm as to appellant Eastern Air Lines, Inc.

I.

The issues presented on this appeal have their roots in the destruction of a DC-4 aircraft, which Eastern had leased from the United States, in a mid-air collision over Washington National Airport on November 1, 1949. The aircraft lease between Eastern and the United States, then represented by the War Assets Administrator, was executed on July 15, 1946, as of December 27, 1945. The lease was effective for five years from the latter date and provided that when this period shall have expired the aircraft covered by the lease was to be returned to the United States. Several particular paragraphs of the lease are relevant for present purposes: Paragraph 11 provided that Eastern was liable to the United States for any damage to the aircraft but that this liability should in no event exceed the value of the aircraft on the date of the damage, and there was set forth in that paragraph a specific formula whereby the value of the aircraft in case of damage

---

[1]. The Government has not appealed the district court's decision that under the terms of the aircraft lease it was only entitled to $126,190.19 of the total insurance proceeds of $380,000 paid to Eastern.

could be readily computed; paragraph 15 obligated Eastern to procure and maintain insurance on the aircraft in an amount satisfactory to the United States, stating that "The proceeds of such insurance shall be made payable to Lessor for the account of all interests involved," and providing that in the event of damage to the aircraft:

(1) proceeds received by Lessor equal to the cost of repair or restoration of the Aircraft shall be made available to Lessee if Lessee shall undertake to repair and restore the Aircraft pursuant to subparagraph (a) of paragraph ELEVEN, and (2) all other proceeds shall be paid by Lessor to Lessee after first deducting any amounts for which Lessee is obligated to Lessor under this lease * * *. In the event the proceeds of insurance are not used for the repair or restoration of the Aircraft, such insurance proceeds shall be credited against any obligations of Lessee to Lessor under this lease, and the balance shall be paid to Lessee.

Eastern procured the insurance required by paragraph 15 of the lease from Glens Falls Insurance Company through Associated Aviation Underwriters, then headed by Byron May as President. Several of the policy's provisions are relevant and should be mentioned. As originally drawn, endorsement 1 to the policy provided in part that "Loss, if any shall be adjusted with Eastern Air Lines, Inc., but shall be payable to the Treasurer of the United States of America for the account of all interests." In 1949, shortly before the November 1, 1949 accident, the lease involved here, along with other leases, was assigned by the War Assets Administrator to the Department of the Navy. The Navy arranged for the policy to be amended by the addition of endorsement 10, which superseded endorsement 1 and provided that "loss, if any, under this policy shall be adjusted with Eastern Air Lines, Inc. and the proceeds at the election of the United States of America shall be payable to Eastern Air Lines, Inc.; any proceeds not paid to Eastern Air Lines, Inc. shall be payable to the Treasurer of the United States of America * * *." Paragraph 31 of the policy, entitled "SUIT AGAINST INSURER" provided *inter alia* that "No suit or action on this policy or for the recovery of any claim hereunder shall be sustainable * * * unless commenced within twelve (12) months next after the happening of the loss * * *."

On November 1, 1949, shortly after the amendment to the policy proposed by the Department of the Navy had become effective, the DC–4 that was the subject of the lease and the policy was destroyed. Eastern soon adjusted the loss with appellant-insurers and, on December 29, 1949, Eastern received payment from them of $380,000, which sum equalled the agreed insured value of $400,000 less a 5 per cent deductible that applied in the cases of losses due to accidental damage. On July 12, 1950 Eastern forwarded its check in the amount of $126,190.19 to the United States with a letter indicating that the check represented the value of the aircraft at the date of damage according to the formula provided in paragraph 11 of the lease. Eastern's letter went on to state that the "tendered payment is in full settlement and satisfaction of amounts due from Eastern Air Lines, Inc., and its insurance carrier for loss of said aircraft under the terms of the lease agreement * * *." The United States, now represented by the Navy Department, returned the check to Eastern, and by letter dated August 9, 1950, informed appellant-insurers that, pursuant to endorsement 10, the United States elected to be paid all the proceeds of the insurance policy, indicating that it believed it had a valid claim to all the proceeds, less a $38,000 adjustment in favor of Eastern. The record discloses no further action by any party until June 20, 1952 when the United States again wrote to the appellant-insurers stating in part "that payment of the proceeds of insurance is long overdue" and urging that the full $380,000 be promptly paid to the Government. Appellant-

insurers replied on August 5, 1952, stating that "Eastern Air Lines claims the right to the entire proceeds of the above policy except for the amount of $126,-190.19 * * *," did not inform the Government that the entire $380,000 had been paid to Eastern more than 31 months earlier, and suggested that "the first step to bring this matter to a conclusion is for the Navy and Eastern to resolve their differences." On August 25, 1952 the Government wrote again to appellant-insurers reiterating its demand for substantially all the $380,000 and specifying that from that sum $38,-014.94 might be deducted and paid over to Eastern. Apparently the United States took no further action to claim the insurance proceeds or any part thereof until nearly 10 years later when this action was commenced in May of 1962.

## II.

■ Appellants maintain that the United States has slept too long on its rights and that this action, commenced almost 13 years after the loss occurred, is now time-barred. They recognize the general rule that the " * * * statute of limitations does not run against the sovereign * * *." United States v. 93 Court Corp., 350 F.2d 386, 388 (2 Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966).[2] But they point out that this rule has not prevented courts from enforcing agreements between the United States and private parties, in which both had agreed to be bound by a period of limitations in their dealings with each other. See, e. g., Delaware, L. & W. R. Co. v. United

States, 123 F.Supp. 579, 581 (S.D.N.Y. 1954). They further note that the insurance policy Eastern procured from appellant-insurers contained a one year limitation period on suits brought to recover claims under the policy and they argue that this provision bars the present suit against any and all defendants by the United States. This argument, based upon a provision in the insurance policy, must be applied separately to the Government's suit against the appellant-insurers and to its suit against Eastern.

■ Insofar as the Government's suit against appellant-insurers is concerned, we assume, as did the court below, that the Government's claim is for the recovery of a claim under the insurance policy. Viewing the case in this light we hold that the suit is time-barred as to them by the limitations clause contained in paragraph 31 of the policy. The court below concluded this defense was not available to appellant-insurers, presumably on some theory of estoppel, because they "concealed" from the United States the fact that payment of the full $380,000 due under the policy had been made to Eastern on December 29, 1949. We are not of the view that this fact, in this case, suffices to make out a case of estoppel. The United States was not notified by appellant-insurers that payment had been made to Eastern.[3] But, as previously noted, Eastern's tender of $126,190.19 to the United States on July 12, 1950 was explicitly made on behalf of Eastern "and its insurance carrier." Surely, this letter must have alerted the United States that its claim to the initial receipt of the

---

**2.** The new section, 28 U.S.C. § 2415, added to the Judicial Code in July 1966, modifies this rule by providing generally that "every action for money damages brought by the United States * * * which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues * * *." 28 U.S.C. § 2415(a). The new statute has no bearing here for the Government's right of action accrued long before the passage of Section 2415, and actions accruing prior to the Section's passage are,

for purposes of Section 2415, deemed to have accrued on the date of the Section's enactment.

**3.** Obviously Eastern knew this from the language of its tender, and on August 28, 1952 a representative of appellant-insurers wrote to a representative of Eastern as follows:

I think the time has now arrived when we have to make a decision as to whether we should advise the Navy that this money has been paid to Eastern Air Lines.

full insurance policy proceeds was disputed and that a settlement between Eastern and appellant-insurers had already been accomplished. In view of this state of affairs it cannot be said that the mere failure of appellant-insurers to inform the United States that payment had been made to Eastern constituted "representations or conduct" that "induced the plaintiff to forbear from prosecuting his known cause of action * * *." Note, 63 Harv.L.Rev. 1177, at 1222 (1950). We therefore reverse the judgment below against appellant-insurers and order the action dismissed as to them.

 On the other hand, we agree with the court below that Eastern's effort also to seek sanctuary beyond the one year limitation period provided in paragraph 31 of the policy has no merit whatever. The Government's claim against Eastern is based on paragraph 11 of the aircraft lease and it was to satisfy this claim that the United States brought suit. The provisions of the policy are irrelevant to this claim; moreover, paragraph 31 is clearly limited to suits against the insurer, which Eastern is not.

 As we have earlier stated, Eastern, on July 12, 1950, tendered its check of $126,190.19 to the United States in full settlement and satisfaction of the defendants' liability; the Government returned the check to Eastern within a month of the tender; and upon motion for summary judgment the court below on September 20, 1965 awarded that identical sum to the Government as the proper principal sum due it under the provisions of the aircraft lease. On appeal none of the parties challenged this award as the proper principal amount due, if any amount at all be due, and we affirm the award.

 This brings us to whether the district court erred in requiring that Eastern pay prejudgment interest on the $126,190.19, in view of the fact that Eastern had tendered precisely this amount to the United States on July 12, 1950 only to have its offer of tender rejected by the United States. It is clear that this issue is to be resolved by federal rather than local law. Clearfield Trust Co. v. United States, 318 U.S. 363, 366, 63 S.Ct. 573, 87 L.Ed. 838 (1943). And in this case it seems appropriate to refer to the general law of contracts for raw material out of which to fashion an applicable federal rule.[4]

 It is well established that a party who has had the use of disputed funds for a period of time must pay interest on that portion of the funds finally determined to belong to his adversary. E. g., United States v. Royal Indem. Co., 116 F.2d 247, 249 (2 Cir. 1940), aff'd, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941). Eastern contends, however, that the lower court's award of prejudgment interest was improper because its tender of $126,190.19 on July 12, 1950—precisely the amount later determined to be the extent of Eastern's liability to the Government—relieved it of any further obligation to pay interest. And, to be sure, a creditor's refusal of a proper tender by his debtor generally does discharge the debtor of all subsequent liability for interest on the debt. 5A Corbin, Contracts, § 1233 (1964 ed.); see Uniform Commercial Code § 3-604. The issue thus becomes whether Eastern's tender was sufficient to invoke this general rule. The United States argues it was not sufficient because Eastern's tender was conditioned on the acceptance of the tendered sum in full settlement. Eastern disputes this proposition of law and claims that even if it were true, the United States waived any objection based on the conditional nature of the tender by insisting that it would accept nothing less than the full amount. While there is substantial support for the rule that even a tender in the proper amount will not discharge subsequent liability for interest if it is conditioned on a demand

---

4. Neither party discusses the choice-of-law issue present here; both cite state and federal cases indiscriminately.

for acknowledgment of full satisfaction of a good faith claim for more, see Caine v. John Hancock Mutual Life Ins. Co., 313 F.2d 297, 302 (6 Cir. 1963); 5A Corbin, Contracts, § 1235(6) (1964 ed.), the Government's case here does not have to depend on our accepting this principle. Eastern's tender was inadequate in not including interest from December 29, 1949, the date of payment by the insurers to Eastern. And on the issue of waiver the only evidence of what occurred is that Eastern's check was returned by the United States on the basis, correct under paragraph 15 of the lease and endorsement 10 of the policy, that the Government was entitled to hold all the insurance proceeds pending resolution of any dispute with Eastern. The case therefore does not truly present the issue whether a tender of the correct amount conditioned on a demand for acknowledgment of full satisfaction and refused by a creditor solely because he demanded more would stop the running of interest.

We therefore hold the tender to have been ineffective, but in appraising the equities we point out that, even if the tender were an adequate and effective one, the United States claims that Eastern's reliance, as a defense in the present case, on the one year limitation provision in paragraph 31 of the insurance policy indicates that it would not have paid $126,190.19 after November 1, 1950, one year after the destruction of the insured aircraft. And it is a fact that Eastern never renewed its tender after that date. In these circumstances it is not unreasonable to conclude that Eastern would have refused to pay even the formerly tendered amount, the $126,190.19, after November 1, 1950. See Sanitary Farm Dairies, Inc. v. Gammel, 195 F.2d 106, 120 (8 Cir. 1952).

It should be noted that here the equities relative to the award of interest are roughly in balance. The extraordinarily tardy manner in which the Government has pressed its claim deserves censure. But Eastern, after all, has had the use of the money ever since December 29, 1949, when it received full payment of the insurance proceeds from the appellant-insurers. Furthermore, although endorsement 10 of the policy, standing alone, is itself somewhat ambiguous, if it is read with paragraph 15 of the lease it becomes quite clear that the arrangement between the parties contemplated that, unless the United States elected otherwise in a particular case, appellant-insurers were to pay the full insurance proceeds directly to the United States, which would in turn pay to Eastern the proportion of the proceeds due Eastern. As the United States would not have elected to have had prepayment made otherwise in this case, the appellant-insurers, if the arrangement had been adhered to, would have been required to pay the United States the full $380,000. Had this agreed-upon procedure been followed here, not Eastern but the United States would have had the use of the $126,190.19, its proper due, from the time of the settlement of the loss. Inasmuch as Eastern was to some extent responsible for the fact that this arrangement was not adhered to, we see no inequity in allowing the Government, on the money withheld from it, to collect interest at the properly reduced rate of 4% for the period Eastern, by apparently relying on the position that the Government's claim to the money had become unenforceable, withheld it.

The district court ordered Eastern to pay 4% interest on the $126,190.19 from December 29, 1949, the date it received payment from appellant-insurers, until September 13, 1965, the date of judgment. This order gives Eastern's tender on July 12, 1950 no effect whatsoever, and, in accord with what we have just said, we also hold with the district court that this ineffective tender did not suffice to relieve Eastern of liability for interest from December 29, 1949 to date of judgment.

The court below is directed to enter judgments in accord with this opinion.