**AMOCO TRANSPORT COMPANY,**
Plaintiff,

v.

**DIETZE, INC., the Royal Bank of Canada, Cast Trading Ltd., Cast Combination Carriers Ltd., Cast Ship Chartering Inc. and Cast Management, S.A., Defendants.**

No. 83 Civ. 4896 (GLG).

United States District Court,
S.D. New York.

March 22, 1984.

Walker & Corsa, New York City, for plaintiff; Hollis M. Walker, Jr., Vera E. Weinberg, New York City, of counsel.

Sage, Gray, Todd & Sims, New York City, for defendant The Royal Bank of Canada; Dorothy E. Hughes, New York City, of counsel.

Milgrim, Thomajan, Jacobs & Lee, P.C., New York City, for defendant Dietze, Inc.; Margaret Hirschfeld, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

On June 28, 1983, plaintiff Amoco Transport Company ("Amoco") commenced this

action, pursuant to 28 U.S.C. § 1335 (1976), by interpleading Dietze, Inc. ("Dietze"), The Royal Bank of Canada ("RBC"), and the various defendants who are a part of the Cast shipping group. Amoco's objective was, and is, to obtain a clear determination of who is entitled to payment of $470,728.84 in freight charges that Amoco incurred in May of last year. Rather than pay that amount into court, Amoco chose to post a bond, as allowed under section 1335(a)(2). By taking this step, Amoco secured for itself the continuous use of the interpleader fund.

■ In the instant motion, Amoco seeks a default judgment against the Cast defendants, who have failed to answer the summons, and an award of costs (including the $3,530 cost of the bond) and attorney's fees, all of which are to be deducted from the interpleader fund. In response, RBC concedes that Amoco's costs and attorney's fees are deductible[1] but contends that Amoco should be ordered to pay interest for the use of the interpleader fund from June 21, 1983, when RBC made its first demand for payment, until the date that demand is satisfied. Amoco replies by denying liability for interest and by contending that RBC is not yet entitled to the interpleader fund because it has yet to establish the validity of its claim. Thus, the Court is faced with two questions: first, whether the interpleader fund can be distributed at this time; and second, whether RBC is entitled to interest.

### The Defendants' Entitlement to the Fund

Because the Cast defendants are clearly in default and the Court, therefore, is granting Amoco's motion for a default judgment against them, there is no reason why the Court should not simultaneously direct a distribution of the interpleader fund. Other than the Cast defendants, the only claimants remaining are Dietze and RBC. Dietze, as a broker, is entitled to have its commission deducted from the interpleader fund, the amount of which has already been agreed to by both Dietze and RBC. Quite clearly then, RBC is the only real, remaining claimant to the fund. In this situation, it is appropriate for the Court to order Amoco to pay the fund to RBC.

Amoco suggests that there must be some further judicial proceeding in which RBC properly establishes its claim. We know of no such proceeding,[2] and the cases that have been cited make no reference to such. Nor is it clear what the purpose of such a proceeding would be. If Amoco believes that it would provide additional protection against a later motion by one of the Cast defendants to set aside the default, Amoco is wrong. See Fed.R.Civ.P. 55(c). If there have been procedural defects in service and notification, they won't be cured by a hearing. Nor would such a proceeding insulate Amoco against claims by other parties not named in this interpleader action. Amoco determined who the litigants would be, and if there are other possible claimants, they pose a problem for Amoco, not the Court.

Unable to discern a valid reason for holding any further proceedings, the Court concludes that a judgment for the distribution of the interpleader fund should be entered

---

**1.** While conceding that an interpleader is generally entitled to deduct costs and attorney's fees incurred in initiating and maintaining its suit, RBC claims that the amount requested by Amoco is excessive and should be limited accordingly. However, the awarding of costs and attorney's fees to an interpleader lies within the sound discretion of the court, *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 209 F.2d 467, 476 (9th Cir.1953); *Stuyvesant Insurance Co. v. Dean Construction Co.*, 254 F.Supp. 102, 114 (S.D.N.Y.1966), *aff'd*, 382 F.2d 991 (2d Cir. 1967) (per curiam), and a thorough review of Amoco's substantiation of its costs and attorney's fees convinces the Court that they are

neither excessive nor unreasonable. Indeed, the total figure of $9,535.92 for costs and fees seems low. The cost of the bond itself was $3,530, which means that the remaining costs and fees for this year-old action come to only $6,005.92.

**2.** The Federal Rules of Civil Procedure provide that no judgment by default shall be entered against the United States unless the claimant establishes his right to relief. Fed.R.Civ.P. 55(e). However, that provision is clearly inapplicable here.

in accordance with the terms of RBC's agreement with Dietze, as well as with the following discussion of the question of interest.

*Interest*

One of the jurisdictional requirements of the federal interpleader statute is that the plaintiff-stakeholder deposit with the court either the money or property that is in dispute or a bond "in such amount and with such surety as the court or judge may deem proper . . . ." 28 U.S.C. § 1335(a)(2). In this instance, Amoco met this requirement by depositing a bond payable to the Clerk of the Court and thus gained for itself the continued use of a fund that it admittedly owed to one claimant or another. The question, therefore, is whether Amoco should be required to pay interest for the use of that fund during the pendency of the litigation.

To answer that question, one must turn to a series of rather inconsistent holdings. In its last decision on this issue, the Second Circuit held that the mere fact that the stakeholder has had the use of a disputed fund subsequent to his timely furnishing of a bond under section 1335(a)(2) will not entitle the claimants to interest. *Aetna Casualty & Surety Co. v. B.B.B. Const. Corp.*, 173 F.2d 307, 309–10 (2d Cir.), *cert. denied*, 337 U.S. 917, 69 S.Ct. 1158, 93 L.Ed. 1726 (1949). However, as Judge Tyler of the Southern District of New York later noted, *Aetna* "does not represent the culmination of a long line of sturdy precedent." *Lee National Corp. v. Kansas City Southern Industries, Inc.*, 50 F.R.D. 412, 414 n. 1 (S.D.N.Y.1970).

Indeed, three years before it decided *Aetna*, the Second Circuit ruled in another interpleader suit that a judgment debtor who had chosen to retain the use of $4,500 by giving a bond for that amount, rather than pay the money into court, was entitled to receive the cost of the premium on the bond but not to an order stopping the running of interest against it. *Great Lakes Transit Corp. v. Marceau*, 154 F.2d 623, 626–27 (2d Cir.1946).

More recently, *Great Lakes Transit* was cited with approval by the Eastern District of Arkansas in *Equifax, Inc. v. Luster*, 463 F.Supp. 352, 356 (E.D.Ark.1978), *aff'd sub nom. Arkansas Louisiana Gas Co. v. Luster*, 604 F.2d 31 (8th Cir.1979) (per curiam). In *Equifax*, the court held that interest on the plaintiff's debt would continue to accrue until the debt was paid, as was required under state law, and that the filing of a surety bond pursuant to the federal interpleader statute would not interrupt the running of such interest on the amount owed.

This Court recognizes that, in *Great Lakes Transit* and *Equifax*, there was an independent basis for initiating the running of interest on the interpleader fund and that the courts, therefore, were merely holding that the posting of a bond to commence an interpleader action is not sufficient to stop the running of interest. However, *Lee National* does offer precedent for awarding interest even where there is no independent basis for its accrual; and, in general, equitable considerations strongly favor a ruling that a stakeholder should be liable for interest on the disputed amount, less the premium of the bond, simply because the stakeholder has enjoyed unfettered use of a fund that admittedly belongs to one of the claimants. *See United States v. United Drill & Tool Corp.*, 183 F.2d 998, 999 (D.C.Cir.1950) (citing *Young v. Godbe*, 82 U.S. (15 Wall) 562, 565, 21 L.Ed. 250 (1873) (a creditor is entitled to interest from the time the debt ought to be paid as compensation for loss of use of his money)). It was in accordance with this reasoning that Judge Tyler held in *Lee National* that, despite circumstances similar in all important respects to *Aetna*, "principles governed by equity and fairness which the court of appeals would find controlling if it were to re-examine this particular point today" support a holding that the stakeholder is liable for interest on the amount owing the claimant, less the cost of the premium on the interpleader bond. *Lee National, supra*, 50 F.R.D. at 414 (quoting *United States v. Eastern Air Lines, Inc.*, 366 F.2d 316, 321 (2d Cir.1966) ("It is well

established that a party who has had use of disputed funds for a period of time must pay interest on that portion of the funds finally determined to belong to his adversary.")).

Judge Tyler's conclusion in *Lee National* recognizes that ordering an interpleader, such as Amoco, to pay interest on the interpleader fund is analogous to compelling a defendant in a non-interpleader action to pay interest to a successful plaintiff for the period prior to judgment.[3] *See id.* at 413–14. Such an award of pre-judgment interest can be made under the equitable powers of the court, even where, as here,[4] the relevant federal statutes make no provision for such an award. *See, e.g., Marshall v. Burger King Corp.*, 509 F.Supp. 353, 355–56 (E.D.N.Y.1981).

In this case, no one is suggesting that Amoco has done anything wrong by retaining the fund for its use. At the same time, however, no one can deny that Amoco benefited enormously by adopting the course it did. This litigation cost Amoco far less than the amount it has either earned or saved by retaining the fund during this time of high interest rates. Furthermore, while it is true, as Amoco argues, that there was no absolute guarantee that RBC would have benefited from the accrual of interest on the fund if it had been deposited with the Court, the probability of that result would have been very great. District courts have the discretion to deposit an interpleader fund in an interest bearing account; RBC almost certainly would have requested the establishment of such an account; and the Court would have been very favorably disposed to do so. Thus, it is most probable that if the fund had been deposited, RBC would have received any interest that accrued on it. The fact that RBC made no demand for such a deposit is no reason to bestow a windfall on Amoco, which would have had to forfeit the fund long ago but for its commencement of this action.

### Conclusion

For the reasons outlined above, the Court concludes that Amoco's motion for default judgment against the Cast defendants and for an award of costs and attor-

---

3. Although the parties barely touch upon the point in their briefs, the Court thinks it important to note that federal interpleader actions, premised upon the diversity of citizenship of the claimants, are no different than ordinary diversity actions in that state substantive law is to be applied, *see, e.g., Griffin v. McCoach*, 313 U.S. 498, 503, 61 S.Ct. 1023, 1025, 85 L.Ed. 1481 (1941); *Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. 715, 722–23 (S.D.N.Y. 1977). In particular, the substantive law of the forum state should be applied to determine whether interest is due. *See, e.g., Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477 (1941); *Wachs v. Winter*, 569 F.Supp. 1438, 1450 (E.D.N.Y.1983). In this case, it is clear that New York law should apply and that, as noted in *Wachs v. Winter, supra*, 569 F.Supp. at 1450–51, the awarding of prejudgment interest is governed by section 5001 of New York's Civil Practice Law. That statute provides that in actions of an equitable nature (such as an interpleader action) the awarding of interest and the "rate and date from which it shall be computed shall be in the court's discretion." N.Y.Civ.Prac.L. § 5001(a) (McKinney 1963).

4. The federal interest statute, 28 U.S.C. § 1961 (1976), speaks only of post-judgment interest, while the federal interpleader statute, 28 U.S.C.

§ 1335 (1976), makes no mention of interest whatsoever. Stressing this point and citing *Phoenix Insurance Co. v. Iacona*, 193 F.Supp. 241, 243 (D.N.J.), *aff'd*, 298 F.2d 638 (3d Cir. 1962) (per curiam), Amoco urges the Court to rule that no award of pre-judgment interest may be granted in the absence of express statutory authority. To so rule, however, the Court would have to disregard the reasoning and holdings of *Equifax, supra*, 463 F.Supp. at 356, and *Lee National, supra*, 50 F.R.D. at 414, which it is unwilling to do. Furthermore, Amoco fails to point out that *Phoenix Insurance* is distinguishable because the court there relied in great part upon New Jersey law, which at the time did not favor the awarding of pre-judgment interest. 193 F.Supp. at 242–43. As was just pointed out, however, the law of New York does permit such an award. *See supra* note 3.

Finally, the Court notes that in the federal question area, the Supreme Court has stated several times that, in the absence of express statutory authority, it is within the court's discretion to determine whether interest is due. *See Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6, 92 L.Ed. 3 (1947); *Royal Indemnity Co. v. United States*, 313 U.S. 289, 295–97, 61 S.Ct. 995, 997–98, 85 L.Ed. 1361 (1941).

ney's fees in the amount of $9,535.92 should be granted. In addition, since there is nothing further to litigate in this action, Amoco is ordered to turn over the interpleader fund to RBC. In sum, therefore, Amoco is ordered to pay RBC $470,728.84 less $9,532.92 in costs and fees, or $461,192.92. Finally, the Court orders Amoco to pay RBC the total interest that has accrued on the $461,192.92 since June 28, 1983, at the New York legal rate of interest of nine percent per annum.[5]

SO ORDERED.

---

5. In a diversity action, the rate of interest to be applied is that specified under the law of the state where the federal court is sitting. *Bank of China v. Wells Fargo Bank & Union Trust Co.,* 209 F.2d 467, 476 (9th Cir.1953). In New York, the specified legal rate of interest is nine percent per annum. N.Y.Civ.Prac.Law § 5004 (McKinney Supp.1983).