Leon **COLLIER**, Plaintiff,

v.

**Jeffrey S. GRANGER**, David Granger, Jeffrey S. Granger, Jr., and M. Frederic Simon individually and as Co-Partners doing business under the firm name and style of Granger & Company, and Sol Raunheim, Defendants.

No. 62 Civ. 3985.

United States District Court
S. D. New York.

July 6, 1966.

Migdal, Low, Tenney & Glass, New York City (Lester C. Migdal, and David G. Handelman, New York City, of counsel), for plaintiff.

Milton Pollack, New York City (Samuel N. Greenspoon, New York City, of counsel), for defendants.

## MEMORANDUM

MacMAHON, District Judge.

Plaintiff, alleging that the clerk of the court made a mistake in failing to include pre-verdict interest in the judgment filed in this action on May 27, 1966, moves under Rules 59(e) and 60(a) of the Federal Rules of Civil Procedure to amend the judgment to include such interest. We grant the motion.

On December 6, 1962, plaintiff filed his complaint containing eight separate claims. The first and fourth claims charged defendants with common law fraud and deceit in that they, or their agents, knowingly misrepresented facts concerning Dilbert's Quality Supermarket, Inc. in connection with the sale of Dilbert's stock to plaintiff. The eighth claim charged defendants with violating Section 17(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77q. The first and fourth claims were based on diversity; the eighth on Section 22(a) of the Securities Act of 1933, as amended, 15 U.S.C. § 77v. After trial by jury, a verdict was returned for plaintiff on the three claims mentioned.

■■ Insofar as the motion for pre-verdict interest is predicated on the successful resolution of the diversity claims, the law of New York controls. St. Clair v. Eastern Air Lines, Inc., 302 F.2d 477, 480 (2d Cir. 1962); Spanos v. Skouras Theatres Corp., 235 F.Supp. 1, 17 (S.D. N.Y.1964). That law has changed since the misrepresentations were made in 1961. At that time, pre-verdict interest in cases of stock fraud was available as a matter of right, Flamm v. Noble, 296 N.Y. 262, 268, 72 N.E.2d 886, 887–888, 171 A.L.R. 812 (1947), as it was in any action "to recover for property damage stemming from intentional torts. * * *" DeLong Corp. v. Morrison-Knudsen Co., 14 N.Y.2d 346, 348, 251 N.Y.S.2d 657, 659, 200 N.E.2d 557, 558 (1964). This decision law was supplemented by Section 480 of the Civil Practice Act which authorized pre-verdict interest in cases involving breach of contract. See DeLong v. Morrison-Knudsen Co., supra. However, by the time this case was tried, in 1966, Section 5001 of the Civil Practice Law and Rules (CPLR) had become effective. Contrary to defendants' argument, we think pre-verdict interest is still available as a matter of right in a case like this, for only two years ago, the New York Court of Appeals unanimously agreed that § 5001 "*expand*[*s*] the right to interest in property damage actions." DeLong v. Morrison-Knudsen Co., supra, at 349, 251 N.Y.S.2d at 660, 200 N.E.2d at 559. Broadly phrased, § 5001 is designed to obliterate all distinctions turning " 'on the form of the action * * *, the type of property involved, or the nature of the encroachment upon the plaintiff's property interests.' (5 Weinstein-Korn-Miller, N.Y. Civ.Prac., par. 5001.05, at p. 50–16.)" Ibid. Though the Court of Appeals has not yet ruled on the question, lower New York courts have consistently held that CPLR § 5001 applies to cases coming to trial after its effective date (September 1, 1963), even though the events complained of occurred earlier. Phelps v. A. R. Gundry, Inc., 23 A.D.2d 960, 261 N.Y.S.2d 194 (1965); Morris v. New York Cent. R., 20 A.D.2d 753, 247 N.Y.S. 2d 293 (1964); Wilcoxon v. Sun Oil Co., 49 Misc.2d 589, 267 N.Y.S.2d 956 (Sup. Ct. 1966); American Broadcasting-Paramount Theatres, Inc. v. American Mfrs. Mut. Ins. Co., 48 Misc.2d 397, 409–410, 265 N.Y.S.2d 76, 90 (Sup.Ct.1965); Buffalo Oil Terminal, Inc. v. William B. Kimmins & Sons, Inc., 42 Misc.2d 499, 248 N.Y.S.2d 499 (Sup.Ct.1964), aff'd, 23 A.D.2d 970, 260 N.Y.S.2d 621 (1965); Spanos v. Skouras Theatres Corp., supra, 235 F.Supp. at 17. But see, Spadanuta v. Incorporated Village of Rockville Centre, 20 A.D.2d 799, 248 N.Y.S.2d 405 (1964), aff'd, 15 N.Y.2d 755, 257 N.Y.S. 2d 329, 205 N.E.2d 525 (1965).

■ Having determined that pre-verdict interest is available as a matter of right, we now decide that it must be

computed from the day the fraudulent sale was made, May 16, 1961. This was certainly the proper date under the early decisional law in New York, Hotaling v. A. B. Leach & Co., 247 N.Y. 84, 159 N.E. 870 (1928); Demms v. Blanchard, 150 Misc. 867, 270 N.Y.S. 700 (Sup.Ct.1934), and under the common law, Smith v. Bolles, 132 U.S. 125, 10 S.Ct. 39, 33 L.Ed. 279 (1889); and though CPLR § 5001 (b) provides that pre-verdict interest is to be "computed from the earliest ascertainable date the cause of action existed," we think the same date applies, notwithstanding the fact that damages were not fixed, or frozen, until the stock was subsequently sold. In Hotaling v. A. B. Leach & Co., supra, the Court of Appeals, on facts like these, unanimously held that pre-verdict interest was due from the date of fraudulent sale, thus implying that though the fraud was of a continuing nature, the cause of action existed at the earlier time. In any event, the words "earliest ascertainable date" convince us that the broad purposes sought to be accomplished by § 5001 are best served by a flexible, common sense approach to the question of when the cause of action initially arose.

■ Section 5004 of the Civil Practice Law and Rules provides that "[i]nterest shall be at the legal rate," and Section 5-501 of the New York General Obligations Law, McKinney's Consol.Laws, c. 24-A provides that the legal rate is 6% per annum.[1] We leave it to the Clerk to compute the amount. The verdict of $10,-915.99, together with the pre-verdict interest computed at 6% from May 21, 1961, to May 25, 1966, should itself draw interest at 6% from May 25, 1966, to the date the amended judgment is entered. CPLR § 5002. After entry of judgment interest on this sum will be computed at 6% per annum. 28 U.S.C. § 1961 (1964 ed.); CPLR § 5003.

■ Plaintiff also bases his right to recover pre-verdict interest on the successful resolution of his eighth claim brought under the Securities Act of 1933. Under § 77l [§ 77 el] of that Act, his recovery is limited to "damages" because he no longer owns the stock in question. However, since the Securities Act of 1933 does not make provision for interest in cases of this complexion, the court may itself award interest in its discretion. Royal Indem. Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941); United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998 (1950). See 3 Loss, Securities Regulations 1721 (2d ed. 1961). Here, we think that 6% interest computed as in the paragraph above will fairly compensate plaintiff for loss of the use of his money. Though we are not compelled to follow New York law, we choose to follow it as a suitable guide.[2]

Defendants contend that plaintiff is estopped from demanding pre-verdict interest because (1) he relies on a precedent, Reno v. Bull, 226 N.Y. 546, 124 N.E. 144 (1919), which he earlier argued was inapplicable, and (2) he made no prior demand for pre-verdict interest, the judge never charged on the subject, and the jury did not independently allow it.

■■ We take these contentions one at a time. First, though plaintiff earlier argued that Reno v. Bull was inapposite, he is not now estopped from arguing the contrary. *Reno* stands for at least two propositions; the first, that damages in stock fraud cases should be measured by out-of-pocket loss; the second, that pre-verdict interest is available to successful stock fraud claimants. However, in ar-

1. The legal rate was also 6% per annum at the time the misrepresentations were made. N.Y. General Business Law, McKinney's Consol.Laws, c. 20, § 370, repealed by N.Y. General Obligations Law, § 19-101, effective September 27, 1964.

2. "While the New York statute fixing the rate of interest is not controlling, the allowance of interest does not conflict with any state or federal policy and we think that, in the circumstances of this case, a suitable rate is that prevailing in the state where the obligation was given and to be performed." Royal Indem. Co. v. United States, 313 U.S. 289, 297, 61 S.Ct. 995 (1941).

guing at trial that, by virtue of the continuing nature of the fraud, the first proposition supported by *Reno* was inapplicable, cf. Hotaling v. Leach & Co., supra, plaintiff did not argue inconsistently with his present contention that *Reno* is respectable authority for the second. This must be obvious, even to counsel for defendants. In any event, defendants have failed to allege or prove that they have been, or will be, prejudiced by plaintiff's allegedly inconsistent use of *Reno*. It is also worth mentioning that plaintiff cited a different case, Flamm v. Noble, supra, as his primary authority for pre-verdict interest.

Defendants' second contention, that plaintiff did not earlier demand pre-verdict interest, is without basis in fact. Plaintiff plainly demanded such interest in the first and fourth claims of his complaint. He also asked for it in the prayer immediately following the eighth claim. Moreover, he requested the court to charge the jury that pre-verdict interest was mandatory. The court, however, did not so charge, and the jury understandably failed to include it in their verdict. However, since the jury obviously did not consider the question of interest, cf. First International Pictures v. F. C. Pictures Corp., 262 App.Div. 21, 22, 27 N.Y.S.2d 816 (1941); Lesjac Realty Corp. v. Mulhauser, 43 Misc.2d 439, 441–442, 251 N.Y.S.2d 62, 65 (Sup.Ct.1964); Borlan Corp. v. Oriental Quilting & Novelty Corp., 34 Misc.2d 735, 737, 232 N.Y.S.2d 71 (1962), aff'd, 18 A.D.2d 1052, 238 N.Y.S.2d 919 (1963), and since interest is available as a matter of right, the court should, and we think must, direct the clerk under CPLR § 5001(c) to compute the interest and enter it in an amended judgment.[3]

Accordingly, plaintiff's motion is granted, and the clerk is directed to amend the judgment filed in this case on May 27, 1966 by computing interest in the following way: take the verdict of $10,915.99, add pre-verdict interest computed at 6% from May 21, 1961 to May 25, 1966; add to this sum 6% interest from May 25, 1966 to the date the amended judgment is entered. This figure, which shall constitute the amount of the judgment, should then draw interest until it is paid at the customary 6%.

So ordered.

---

**3.** Defendants do not contend that the amount of damages stipulated by counsel at the end of trial either includes or precludes pre-verdict interest, an argument we would surely reject. We raise the issue, first, to explain the reason for the clerk's mistake and, second, to record our opinion on a point which may well be raised for the first time on the pending appeal.

Trial transcript, p. 270:
"THE CLERK: How do you find on count 1?

THE FORELADY: We find for the plaintiff on count 1.

THE CLERK: In what amount?

THE FORELADY: The difference between the price he paid for the Dilbert stock and the price at which he sold the Dilbert stock.

THE COURT: Did you compute it?

THE FORELADY: No, sir.

THE COURT: Well, you can stipulate what that amount is.

MR. GREENSPOON: Yes, sir.

MR. DILBERT [sic MR. MIGDAL]: Yes, your Honor."

Trial transcript, p. 272:
"THE COURT: Before we hear the motions let us get the correct amount.

MR. MIGDAL: Your Honor, the amount was stipulated in the pre-trial order.

THE COURT: Well, state what it is, please.

MR. MIGDAL: Yes.

MR. GREENSPOON: $10,915.99.

THE COURT: Is that right?

MR. MIGDAL: That is correct.

MR. GREENSPOON: I think it is correct.

THE COURT: All right."