#### Joseph STROBL, Plaintiff,

v.

NEW YORK MERCANTILE EXCHANGE, Clayton Brokerage Co. of St. Louis, Inc., Heinold Commodities, Inc., Thomson and McKinnon, Auchincloss, Kohlmeyer, Inc., Ben Pressner, Pressner Trading Corp., John Richard Simplot a/k/a Jack Richard Simplot a/k/a J.R. Simplot, J.R. Simplot Company, Simplot Industries, Inc., Simplot Products Company, Inc., Peter J. Tagares a/k/a Peter J. Taggares, P.J. Taggares Company, C.L. Otter, Simtag Farms, Kenneth Ramm, A & B Farms, Inc., Hugh D. Glenn, Gearheart Farming, Inc., Ed McKay, Harvey Pollak, Henry Pollak, Henry Pollak, Inc., Henry A. Pollak & Company, Inc., Robert Reardon a/k/a Bobby Reardon, F.J. Reardon, Inc., Alex Sinclair, Sinclair & Company, Stephen Sondheimer, Charles Edelstein, James Landry a/k/a Jim Landry and Jerry Rafferty, jointly and severally, Defendants.

No. 79 Civ. 1834 (LFM).

United States District Court, S.D. New York.

July 11, 1984.

Lovell & Westlow by Christopher Lovell and George F. Brammer, Jr., New York City, for plaintiff.

Curtis, Mallet-Prevost, Colt & Mosle by Peter Fleming Jr. and Scott J. McKay Wolas, New York City, for defendants John R. Simplot, J.R. Simplot Co., Simplot Industries, Inc., Peter J. Taggares, P.J. Taggares Co. and SimTag Farms.

## OPINION

MacMAHON, District Judge.

This case arose from the massive default in 1976 by short position holders in the market for May 1976 Maine potato futures contracts. *See Leist v. Simplot,* 638 F.2d 283, 285 (2d Cir.), *aff'd sub nom. Merrill Lynch, Pierce Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In November 1983, following an 11-day jury trial, a verdict was returned against defendants. On March 20, 1984, we denied defendants' motion for judgment notwithstanding the verdict or for a new trial. *Stroble v. New York Mercantile Exchange,* 582 F.Supp. 770 (S.D.N.Y.1984).

In yet another round of post-trial motions, defendants now move for (1) a new trial based on newly discovered evidence,

Fed.R.Civ.P. 59, 60(b); (2) reargument of their prior post-trial motions for judgment notwithstanding the verdict or for a new trial, Local Rule 3(j); and (3) reduction of plaintiff's award by the amount of his settlement payments. Additionally, plaintiff moves for prejudgment interest.

### Newly Discovered Evidence

Defendants contend that the "factual findings" contained in an "Initial Decision on Default" by an Administrative Law Judge ("ALJ"), *In re Collins*, 2 Comm.Fut. L.Rep. (CCH) ¶ 21,960 (Commodity Futures Trading Commission 1984), constitute newly discovered evidence warranting the grant of a new trial. We find defendants' argument seriously flawed.

■ Both Rule 59(a) and 60(b)(2), Fed.R. Civ.P., provide in effect that the court may grant a new trial on the ground of "newly discovered evidence which by due diligence could not have been discovered" at the time of the trial.[1] It is beyond peradventure that "newly discovered evidence" refers to evidence in existence at the time of the trial...." *Campbell v. American Foreign S.S. Corp.*, 116 F.2d 926 (2d Cir.), *cert. denied*, 313 U.S. 573, 61 S.Ct. 959, 85 L.Ed. 1530 (1941). Similarly, in *Ryan v. United States Lines Co.*, 303 F.2d 430 (2d Cir. 1962), the court stated: "Rule 60(b)(2), pertaining to newly discovered evidence, permits reopening a judgment only on the discovery of evidence in existence and hidden at the time of the judgment...." *Id.* at 434. *See also Prostrollo v. University of South Dakota*, 63 F.R.D. 9, 11 (D.S.D. 1974) (no relief "for evidence which has only come into existence after the trial is over"); *In re Boeing Airplane Co.*, 2 F.R. Serv.2d 927 (D.D.C.1959); 11 Wright & Miller, Federal Practice and Procedure § 2808 at 55 & n. 94 (1973 & Supp.1983); 6A

Moore's Federal Practice ¶ 59.08[3] at 59–100 (rev. 2d ed. 1982).

■ The proffered evidence upon which defendants rely is the "factual findings *contained in* the *Collins* decision and not ... hearing testimony underlying those findings." Defendants' Reply Memorandum of May 11, 1984, at 3 (emphasis in original). But, as defendants correctly note, "The *Collins* decision was issued and published *after* the conclusion of the trial." *Id.* (emphasis supplied). Thus, defendants' evidence—the ALJ's findings—was not in existence at the time of the trial. Consequently, these "findings" are not "newly discovered evidence." *Ryan, supra; Campbell, supra.*

Moreover, the proffered evidence must be admissible to qualify as newly discovered evidence. *E.g.*, 6A Moore's Federal Practice ¶ 59.08[3] at 59–102 (rev. 2d ed. 1982). The evidence proffered here is hearsay because the ALJ's "findings" are out of court statements offered for the truth of the matter asserted. Fed.R.Evid. 801(c).

Defendants, relying on Fed.R.Evid. 803(8)(C), argue that the findings fall within an exception to the hearsay rule as "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

This exception must be applied "in a commonsense manner," especially "in determining whether the hearsay document ... has sufficient indicia of reliability to justify its admission." *City of New York v. Pullman Inc.*, 662 F.2d 910, 914 (2d Cir.), *cert. denied sub nom. Rockwell Int'l Corp. v. City of New York*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1981). Considering the source of the information and the circumstances under which that information

---

**1.** As noted in the text, *supra*, by amended notice of motion, defendants' motion for a new trial based on newly discovered evidence is premised on both Fed.R.Civ.P. 59 and 60(b). Each of these rules provides a different time within which the motion must be made. However, the substantive standards under both rules are es-

sentially identical. "What constitutes newly discovered evidence is substantially the same, whether the motion is made under Rule 59(b) or Rule 60(b)." 6A Moore's Federal Practice ¶ 59.08[3] at 59–98 (rev. 2d ed. 1982) (footnote omitted).

was transformed into "findings of fact," we conclude that the evidence lacks sufficient indicia of trustworthiness to qualify for admission under 803(8)(C). *See City of New York v. Pullman Inc., supra,* 662 F.2d at 914–15; *Zenith Radio Corp. v. Matsushita Electric Industrial Co.,* 505 F.Supp. 1125, 1146–49, 1180–81 (E.D.Pa. 1980); Notes of Advisory Committee, Fed. R.Evid. 803(8)(C), 28 U.S.C.A. at 590 (West 1975); 4 Weinstein's Evidence ¶ 803(8)[03] at 803–206 (1981).

The ALJ's decision, by its own terms, is simply an "Initial Decision on Default." *In re Collins, supra,* ¶ 21,960 at 28,134. The administrative proceeding was commenced by the Commodity Futures Trading Commission's Division of Enforcement. The complaint, in essence, alleged that respondents attempted to manipulate upward the price of May 1976 Maine potato futures contracts and exceeded maximum net short positions for potato futures contracts established by the Commission. *Id.* at 28,134 to 135. Although the respondents in the proceeding filed answers to the complaint,[2] the ALJ specifically noted that:

> At no time during the course of the hearing in this matter did [respondents] appear at the hearing, nor did any of these respondents comply with § 10.62(b) of the Rules of Practice ... by filing notices of appearance indicating an intention to continue participating in the proceeding. Neither have these respondents filed any proposed findings of fact, conclusions of law or briefs subsequent to the hearing in this proceeding.

*In re Collins, supra,* at 28,135 (footnote omitted).[3]

The Division of Enforcement then moved for a default order and entry of findings and conclusions based on the allegations of its complaint, pursuant to § 10.93 of the Commission's rules. 17 C.F.R. § 10.93 (1983). That section provides that when a respondent in a Commodity Futures Trading Commission hearing before an ALJ fails to appear or file a notice of appearance, the ALJ may "enter findings and conclusions and a default order against that respondent based upon the matters set forth in the complaint, which shall be deemed to be true for the purposes of this determination." *Id.*

Accordingly, the ALJ entered a default order against respondents and simply adopted the allegations of the complaint as his findings of fact: "Therefore, findings of fact, conclusions of law, and a default order shall be entered against the ... respondents ... taking the matters set forth in the complaint to be true for the purposes of determining the issues against them." *In re Collins, supra,* at 28,135.

The findings here are similar to those in *Zenith Radio Corp. v. Matsushita Electric Industrial Co., supra.* There, an administrative agency's findings were deemed untrustworthy because they were simply "copied verbatim without review" from the "accusatory document" filed by the agency's Enforcement Division staff. *Id.* at 1180.

Moreover, because the findings there were based solely upon an agency investigation proceeding—the agency's formal fact finding hearing—the court held that the purported findings were "simply too preliminary to be trustworthy within the meaning of [Fed.R.Evid.] 803(8)(C)." *Id.* Similarly, in *City of New York v. Pullman, Inc., supra,* 662 F.2d at 914, an interim

**2.** The ALJ's decision states only that respondents "filed answers to the complaint." Thus, we cannot determine whether the answers were, for example, general or specific denials and what further assertions, if any, were made by respondents.

**3.** The omitted footnote stated that "[a]lthough Collins testified at the hearing as a Division [of Enforcement] witness, he did not enter an appearance." Thus, while it appears that one respondent chose to testify on behalf of the Divi-

sion, he also failed to present his own case. In any event, in this motion defendants have specifically stated that they do not rely on the hearing testimony as the "newly discovered evidence." Defendants' Reply Memorandum of May 11, 1984, at 3. Indeed, they could not rely on such testimony because these hearings were held well before this trial and there is no showing that the substance of the testimony was unavailable to defendants at trial.

report subject to revision and review did "not satisfy the express requirement of the rule that the proffered evidence must constitute the 'findings' of an agency or official."

Here, as we have seen, the ALJ, pursuant to 17 C.F.R. § 10.93, essentially rubber stamped the allegations of the Enforcement Division's complaint as his findings of fact for the limited purpose of entering an initial decision on default. Thus, the proffered "findings" are "findings" in name only. They do not constitute a reasoned result based on an impartial weighing of evidence and the operation of a disinterested mind. *Cf. United States v. El Paso Gas Co.,* 376 U.S. 651, 656–57, 84 S.Ct. 1044, 1046–47, 12 L.Ed.2d 12 (1964). In short, they are not the result of a review on the merits by the agency fact finder, as contemplated by Fed.R.Evid. 803(8)(C).

The proffered findings are further suspect because there is no evidentiary support whatever for determining the source or reliability of the allegations made in the Enforcement Division's complaint. These allegations were adopted mechanically without the exercise of any judgment whatever by the ALJ. The findings are, therefore, subject to the same deficiency, in terms of assessing trustworthiness, as the allegations in the Enforcement Division's complaint.

Thus, even if newly discovered, the proffered ALJ findings would not serve as a basis for a new trial because they are hearsay and do not satisfy the requirement of trustworthiness under Fed.R.Evid. 803(8)(C).[4]

### Motions for Reargument

Defendants move for reargument of their prior motion for a reduction of the verdict, which we denied in our opinion of March 20, 1984. We have carefully reviewed defendants' latest contentions and find them without merit.[5]

In a footnote, defendants also move for reargument of their prior motions for judgment n.o.v. or for a new trial, which we also denied on March 20, 1984. The sole basis of this motion is the purported factual findings of the ALJ in *In re Collins, supra.* Having rejected these findings as a basis for a new trial motion, *supra,* defendants' motion for reargument premised on the same findings must also be denied.

■ The original complaint in this action named 31 defendants, including corporate and individual defendants. Before trial, however, plaintiff and most of the defendants agreed to an out-of-court settlement. As part of their settlement agreements, the settling defendants agreed to pay plaintiff

4. In light of the two independently sufficient reasons stated in the text for denying defendants' motion, we need not address the numerous additional requirements a movant for a new trial based on newly discovered evidence must establish. *See* 7 Moore's Federal Practice ¶ 60.-23[4] at 60–198 to 203 (rev. 2d ed. 1983). However, we note that as part of their case at trial, defendants presented evidence of a "long squeeze" and its purported consequences in the May 1976 Maine potato futures market. Defendants' proffered evidence in the instant motion, if admissible and credible, would lend some support to this claim. Nonetheless, the evidence would be cumulative and certainly not of "such a material and controlling nature as will probably change the outcome." *Id.* at 60–201 to 202. Cumulative new evidence which goes only to the weight and credibility of existing evidence is not a sufficient basis for the extraordinary remedy of a new trial. *County of Trinity v. Andrus,* 77 F.R.D. 29, 31 (E.D.Cal. 1977).

5. For example, defendants contend that plaintiff's counsel, in his summation, conceded that plaintiff was "only entitled to $305,000." Defendants' Memorandum of March 27, 1984. Aside from the fact that plaintiff's counsel's closing arguments are not evidence, defendants' interpretation of the record is simply incorrect. Plaintiff's counsel noted the $305,000 figure as but one of several alternative damage assessments—and one which would give defendants the benefit of their downward price manipulation. Tr. 1212–13. Similarly incorrect is defendants' statement that plaintiff testified that he was "only entitled to $2.00 more per contract then [sic] he received (Tr. 311)...." Defendants' Memorandum of March 27, 1984, at 12. Plaintiff never made such a statement, and even a brief review of the testimony preceding and following plaintiff's testimony on page 311 of the transcript highlights defendants' mischaracterization of plaintiff's testimony.

a total of $116,375 (hereinafter "settlement payments"). Defendants now move for the deduction of these settlement payments from the award of damages. Plaintiff does not object to this deduction but contends that the deduction should not be made from the award before trebling. Rather, plaintiff argues that the deduction should be from the amount of damages after they have been trebled.[6]

We agree with plaintiff. "The district court should first treble the amount of the jury's verdict and then subtract the [amount] already paid in settlements." *Hydrolevel Corp. v. American Society of Mechanical Engineers, Inc.,* 635 F.2d 118, 130 (2d Cir.), *aff'd,* 456 U.S. 556, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982); *accord Burlington Industries v. Milliken & Co.,* 690 F.2d 380 (4th Cir.1982).

### *Prejudgment Interest*

Plaintiff moves for an order granting prejudgment interest. The jury returned a verdict for plaintiff on three claims: (1) violation of § 1 of the Sherman Act, 15 U.S.C. § 1; (2) violations of the Commodity Exchange Act, 7 U.S.C. §§ 13(b), 6(a); and (3) violation of New York's common law prohibition of fraud. The jury awarded plaintiff $460,000 in damages.

■ To the extent that plaintiff's motion is premised on the verdict for plaintiff on the New York common law fraud claim, New York law controls. *See United Bank Ltd. v. Cosmic Int'l, Inc.,* 542 F.2d 868, 877–78 (2d Cir.1976); *Spector v. Mermelstein,* 485 F.2d 474, 481–82 (2d Cir.1973); *Collier v. Granger,* 258 F.Supp. 717, 718 (S.D.N.Y.1966). New York CPLR § 5001 provides for mandatory recovery of prejudgment interest. N.Y.Civ.Prac.Law § 5001 (McKinney 1963 & Supp.1983). Such interest is computed "from the earliest ascertainable date the cause of action existed." *Id.* § 5001(b).

■ Plaintiff selects May 4, 1976, the date on which plaintiff finally liquidated his futures position, as the earliest possible date upon which his cause of action existed. Defendants offer no objection to this date. On May 4, 1976, plaintiff's total damages became ascertainable; therefore, plaintiff is entitled to pre-verdict interest from May 4, 1976 to November 16, 1983, the day before the verdict was rendered. *See United States v. Government Employees Ins. Co.,* 421 F.Supp. 1322 (S.D.N.Y.1976); *Rock Transport Properties Corp. v. Hartford Fire Ins. Co.,* 312 F.Supp. 341 (S.D.N.Y.1970). In addition, pursuant to N.Y.Civ.Prac.Law § 5002, plaintiff is entitled to prejudgment interest upon the verdict from November 17, 1983, the date of the verdict, to "the date of entry of final judgment."

Section 5004, N.Y.Civ.Prac.Law, states that "[i]nterest shall be at the rate of nine per centum per annum, except where otherwise provided by statute." However, Section 2, L.1981, c. 258, provides: "This act [amending § 5004] shall take effect ten days after [June 15, 1981]. In actions in which interest is to be computed from a date prior to such effective date, interest shall be computed at the rate of six per centum per annum until such date and nine per centum per annum thereafter." *See* N.Y.Civ.Prac.Law § 5004 (McKinney Supp. 1984) (legislative history notes).

Thus, interest should be computed at 6% per annum from May 4, 1976 until June 25, 1981, and at 9% per annum from June 26, 1981 until the date final judgment is entered.[7]

■ Plaintiff also premises his motion for prejudgment interest on the Commodity Exchange Act claim. It is well established that in the absence of a statutory directive or controlling case law, the grant or denial of prejudgment interest on claims arising under federal law is within the sound discretion of the district court.

---

**6.** Plaintiff states that the " 'precise amount' " of settlement payments is $116,375. Plaintiff's Memorandum of April 25, 1984, at 1 (Memorandum refiled on May 30, 1984). Defendants have not challenged this figure.

**7.** The date of entry of final judgment shall be determined as set forth in footnote 9.

*E.g., Lodges 743 and 1746 v. United Aircraft Corp.,* 534 F.2d 422, 446 (2d Cir.), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976); *Norte & Co. v. Huffines,* 416 F.2d 1189, 1191–92 (2d Cir.), *cert. denied sub nom. Muscat v. Norte & Co.,* 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970). There appears to be no case specifically addressing the issue of prejudgment interest in private claims under the Commodity Exchange Act, and the statute and legislative history are silent. We see no sound reason, however, not to apply the general rule that the issue of prejudgment interest on federal claims is to be resolved within the sound discretion of the district court. The reasoning of the Seventh Circuit in *Myron v. Chicoine,* 678 F.2d 727, 733–34 (7th Cir.1982), is instructive:

> Given the compensatory basis of awarding prejudgment interest and the remedial purposes of CFTC [Commodity Futures Trading Commission] reparation proceedings, we have no doubt that the Commission may award such relief in appropriate cases. Nevertheless, the decision to award prejudgment interest rests in the sound discretion of the adjudicatory tribunal and involves a balancing of the equities between the parties under the circumstances of the particular case.

■ In exercising its discretion, the court must bear in mind that "an award of prejudgment interest is in the first instance, compensatory," and, secondly, is governed by fundamental considerations of fairness. *Rolf v. Blyth, Eastman Dillon & Co.,* 637 F.2d 77, 87 (2d Cir.1980). The compensatory rationale is especially applicable "in cases [such as this] involving investments because by entering into such a transaction, the investor has manifested his intention to utilize the funds for the production of income." *Myron v. Chicoine, supra,* 678 F.2d at 734.

■ Viewing the facts in light of these considerations, we find that an award of prejudgment interest on the Commodity Exchange Act claim is necessary fully to compensate plaintiff for the loss of the use of his money and that such interest is not inequitable under the circumstances. Plaintiff has been unable to invest or otherwise use $460,000 for over seven years. This is a substantial sum. *See Rolf v. Blyth, Eastman Dillon & Co., supra,* 637 F.2d at 87; *see also Chris-Craft Industries, Inc. v. Piper Aircraft Corp.,* 516 F.2d 172, 191 (2d Cir.), *rev'd on other grounds,* 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1975).

Furthermore, "there is no evidence of dilatory tactics on the part of the plaintiff." *Rolf v. Blyth, Eastman Dillon & Co., supra,* 637 F.2d at 87. Indeed, it appears that throughout the tortuous course of this litigation, plaintiff has made every effort to bring this case to trial. *Cf. Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426, 429 (2d Cir.1962) (delays in admiralty suit due to difficulties on both sides in obtaining evidence). Nor is there evidence of wrongdoing by the plaintiff. *Lodges 743 and 1746 v. United Aircraft Corp., supra,* 534 F.2d at 447. Finally, defendants have made no showing of unfairness of an award of prejudgment interest. *See Rolf v. Blyth, Eastman Dillon & Co., supra,* 637 F.2d at 87.

■ As to the specific rate of interest, we may look to the law of New York as a suitable guide. *Collier v. Granger, supra,* 258 F.Supp. at 719. We find that the interest provisions of N.Y.Civ.Prac.Law §§ 5001, 5003, 5004, as applied to the state law claims, *supra,* reasonably and equitably compensate plaintiff for the loss of the use of his money.

■ Plaintiff also contends that prejudgment interest should be assessed on the basis of his federal antitrust claim. The general rule of discretion in awarding prejudgment interest on federal claims, however, is inapplicable to federal antitrust claims, at least in this circuit. *Trans World Airlines, Inc. v. Hughes,* 449 F.2d 51, 80 (2d Cir.), *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973); *Vandervelde v. Put & Call Brokers & Dealers Ass'n,* 344 F.Supp. 118, 157

(S.D.N.Y.1972); *see also Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 638 F.2d 661, 663 (3d Cir.1981); *Heatransfer Corp. v. Volkswagenwerk, A.G.*, 553 F.2d 964, 987 (5th Cir.1977); *Locklin v. Day-Glo Color Corp.*, 429 F.2d 873, 877 (7th Cir.1970); *Smith v. Pro-Football, Inc.*, 528 F.Supp. 1266, 1275 (D.D.C.), *aff'd in part and rev'd in part on other grounds*, 593 F.2d 1173 (D.C.Cir.1978).[8]

 Plaintiff cites two cases in this district which apparently support his request for prejudgment interest on the antitrust claim. The first case, *Uniroyal, Inc. v. Jetco Auto Service, Inc.*, 1980–81 CCH Trade Cases ¶ 63,806 at 78,315 (S.D.N.Y. 1981), neither cited nor considered the Second Circuit's holding in *Trans World Airlines, Inc., supra. Uniroyal, Inc. v. Jetco Auto Service, Inc., supra*, at 78,321 (citing without discussion only the district court's opinion in *Trans World Airlines, Inc. v. Hughes*, 308 F.Supp. 679, 696 (S.D.N.Y. 1969), which denied prejudgment interest).

In the second case relied upon by plaintiff, *Eiberger v. Sony Corp. of America*, 459 F.Supp. 1276, 1289 (S.D.N.Y.), *rev'd on other grounds*, 622 F.2d 1068 (2d Cir.1980), the district court did not discuss the issue of prejudgment interest in federal antitrust claims, cited no authority in support of its award, and failed completely to consider the controlling rule of *Trans World Airlines, Inc.*

Thus, we do not find these cases persuasive and choose, as we must, to follow the rule laid down in *Trans World Airlines, Inc., supra.* In cases such as this, commenced prior to the enactment in 1980

of the Antitrust Improvements Act, Pub.L. No. 96–349, 94 Stat. 1156, prejudgment interest on federal antitrust claims is not allowed. *Accord Vendervelde v. Put & Call Brokers & Dealers Ass'n, supra; Smith v. Pro-Football, Inc., supra.*

Accordingly:

(1) Defendants' motion for a new trial based on newly discovered evidence and for reargument of their earlier post-trial motions are denied in all respects.

(2) Defendants' motion to deduct plaintiff's settlement payments from the damage award is granted in the following respect: plaintiff's settlement payments shall be subtracted from the amount of the award after trebling.

(3) Plaintiff's motion for prejudgment interest is granted in the following respects: on the amount of $460,000 plaintiff shall receive interest at 6% per annum from May 4, 1976 until June 25, 1981, and at 9% per annum from June 26, 1981 until the date final judgment is entered. Plaintiff's motion for prejudgment interest is denied in all other respects.[9]

Settle judgment within ten (10) days.

---

**8.** Before 1980, Section 4 of the Clayton Act, 15 U.S.C. § 15, was silent on the issue of prejudgment interest in private treble damage actions. In 1980, however, Congress enacted the Antitrust Improvements Act, Pub.L. No. 96–349, 94 Stat. 1156, which provides for the discretionary award of interest "on actual damages for the period beginning on the date of service of [the pleading] and ending on the date of judgment, or for any shorter period therein." 15 U.S.C. § 15 (1982), 15 U.S.C.A. § 15 (West Supp.1984). However, this provision is applicable only "to actions commenced after the date of the enactment of this Act [September 12, 1980]." 15 U.S.C.A. § 15 (West Supp.1984) (legislative his-

tory notes quoting Pub.L. No. 96–349, § 4(b)). Because the instant suit was filed before 1980, the interest provision of § 15 is inapplicable.

**9.** The parties have brought to our attention various clerical errors in the judgment entered by the Clerk on March 8, 1984. The parties may address these errors when they settle judgment, and we will amend or vacate and reenter the corrected judgment. Fed.R.Civ.P. 60. The date of "final judgment" for the purposes of computing prejudgment interest shall be the date that a judgment in accordance with this opinion is entered.