**HUDSON'S BAY COMPANY FUR SALES, Plaintiff,**

v.

**AMERICAN LEGEND COOPERATIVE, Defendant.**

Civ. A. No. 86–2899 (AJL).

United States District Court,
D. New Jersey.

April 20, 1987.

Frederick L. Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, N.J., for plaintiff.

Eric J. Lobenfeld, Dewey, Ballantine, Bushby, Palmer & Wood, New York City,

Clive S. Cummis and Steven S. Radin, Sills, Beck, Cummis, Zuckerman, Radin, Tischman & Epstein, Newark, N.J., for defendant.

## OPINION

LECHNER, District Judge.

On December 19, 1986, judgment was entered against plaintiff Hudson's Bay Company Fur Sales, Inc. ("Hudson") on all counts of its complaint (the "Judgment"). The court issued its opinion (the "Opinion") contemporaneously with the Judgment. *Hudson's Bay Co. Fur Sales, Inc. v. American Legend Co-Op.*, 651 F.Supp. 819 (D.N.J.1986). After the Judgment and Opinion were rendered, Hudson and defendant American Legend Cooperative ("Legend") each conducted fur auctions. Based on the results of these auctions, Hudson filed the instant motion to vacate the Judgment pursuant to Rule 60(b)(2), Fed.R.Civ.P. For the reasons set forth below, Hudson's motion is denied.

*Facts*

The facts relating to this litigation are detailed in the Opinion, 651 F.Supp. 819, and need not be restated here. However, a brief resume of pertinent facts is necessary. This matter concerns a restriction placed on a trademark, "Blackglama," by Legend which controls the mark. As a result of the restriction, breeders of mink pelts are not able to use the mark if they sell their pelts in any location other than the Seattle Fur Exchange ("SFX"), an auction house owned by Legend. Hudson claims this restriction violates the anti-trust laws.

On July 25, 1986 Hudson commenced this action by the filing of a Verified Complaint together with an Order to Show Cause requesting injunctive relief. This relief was denied following a hearing. Thereafter pre-trial discovery was conducted and completed; the trial commenced on October 8, 1986. Prior to commencement of the trial, counsel and the court met several

times in chambers to discuss both pre-trial and trial procedures. During these conferences (which were off the record) the court raised the issues as to whether the matter was proceeding too quickly and whether the parties would be in a position to fully litigate the matter at an early date. Counsel for both parties indicated they would be in a position to complete discovery, prepare and try the matter if the court would accomodate the parties with an early October, 1986 trial date.

The rush to complete the trial in the matter resulted from the pending auctions of fur pelts which were scheduled for January, 1987. Counsel for both Hudson and Legend were interested in moving the case to completion as soon as possible. In point of fact, the interest to move the case was vocalized more strenuously by counsel for Hudson who was sure the matter could and would be completed on an expedited basis.

At oral argument of the instant motion on April 13, 1987 counsel for Hudson agreed the concept and consequences of an expedited trial were discussed at pre-trial conferences. Hudson's counsel further acknowledged he was aware of the problems with moving so rapidly. This motion is the realization of one of those problems.

Following completion of the trial, Hudson held its auction on January 20 and 21, 1987; the Legend auction took place the following week. Hudson now argues the facts and evidence which developed entirely from the January, 1987 auctions compel the granting of a new trial pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. According to Hudson, the evidence is newly discovered since the fact of the trademark's economic power allegedly existed during the course of the trial but the evidence of this power was not available until the January, 1987 auctions.

Hudson presents the court with a scenario where both facts and evidence which it claims support its anti-trust allegations came into existence several months after the close of the trial. Specifically, Hudson argues its allegation at trial of the market

power of a trademark of Legend (which, as mentioned, Hudson asserts to be a fact) is now supported by the facts and the statistics resulting from the auctions, as well as certain evidence developed from these auctions.

*Discussion*

Rule 60(b), Fed.R.Civ.P., provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons . . . . .

> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); . . .

To succeed in opening a judgment pursuant to Rule 60(b)(2) "[t]he evidence must have been discovered after trial and the failure to learn must not have been caused by lack of diligence." *Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983). Furthermore, the newly discovered evidence must be "material to the issues involved, yet not merely cumulative or impeaching and must be of such a nature that it would probably change the outcome." *Id., citing United States v. Meyers,* 484 F.2d 113, 116 (3d Cir.1973).

As newly discovered evidence, Hudson offers the data contained in the Affidavit of Alan M. Rosen[1] ("Rosen Aff.") reflecting various comparisons between the results of the Hudson and SFX auctions before and after issuance of the Judgment. Specifically, Hudson cites to the difference in sales of standard dark mink pelts in 1986 and 1987, Rosen Aff., ¶ 2, Exh. A; the prices obtained for dark mink at SFX compared to those obtained at Hudson in 1987, Rosen Aff., ¶ 3, Exh. B; the increase in number of designations received by former Hudson shippers at the January, 1987 SFX auctions, Rosen Aff., ¶ 4, Exh. C; and the similarity of increase in number of mutation pelts offered by SFX in 1987 as com-

---

1. Alan M. Rosen is the Vice-President of Finance of Hudson.

pared to 1982, Rosen Aff., ¶ 5. Hudson contends this evidence, allegedly reflective of the power of the mark and other marks, is newly discovered.

In defining newly discovered evidence for purposes of Rule 60(b)(2), Fed.R.Civ.P., courts have consistently held the evidence must have been in existence at the time of trial. *See, e.g., EEOC v. Rath Packing Co.,* 787 F.2d 318, 330–31 (8th Cir.) *cert. denied,* —— U.S. ——, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986) (court affirmed denial of plaintiff's attempt in employment discrimination case to introduce as newly discovered evidence a report concerning employer's hiring procedures at plant during a time period subsequent to issuance of trial court's opinion.); *Peacock v. Board of School Commissioners of Indianapolis,* 721 F.2d 210, 212–214 (7th Cir.1983) (court properly denied Rule 60(b)(2) motion seeking relief on the grounds of a post-judgment denial of intervention in another case); *Corex Corp. v. United States,* 638 F.2d 119, 121–22 (9th Cir.1981) (fact that the district court considered after occurring events in granting a 60(b)(2) motion was grounds for reversal); *accord Storbl v. New York Mercantile Exchange,* 590 F.Supp. 875, 880 n. 4 (D.N.Y.1984) *aff'd* 768 F.2d 22 (2d Cir.) *cert. denied,* —— U.S. ——, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985).

In an attempt to counter this established principle, Hudson suggests there is distinction between facts and evidence. Hudson reasons, "the *fact* of the economic power of BLACKGLAMA existed at the time of our trial … the auction results did not exist until *after* trial. But the newly discovered evidence does no more than put in writing what was true then and is true now…." Hudson's Letter Reply Brief at 2 (emphasis in original). This reasoning is sophistry. "Cases construing 'newly discovered evidence,' either under [Rule] 60(b)(2) or Rule 59, uniformly hold that *evidence of events occurring after trial* is not newly discovered evidence within the meaning of the rules." *Corex Corp.,* 638 F.2d at 121 (emphasis added); *accord, Stridiron* at 207; *Brown v. Pennsylvania Railroad Company,* 282 F.2d 522, 526–27 (3d Cir.), *cert.*

*denied,* 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1960).

The dichotomy between "facts" and "evidence" was explained by Judge Gee in his dissenting opinion in *Chilson v. Metropolitan Transit Authority,* 796 F.2d 69, 73 (5th Cir.1986) wherein he stated:

> The facts involved are those events or conditions the occurrence or existence of which creates, or relates to, the dispute between the parties. Evidence, on the other hand, is any species of proof offered in court to convince the decision maker of certain facts. One does not—cannot—offer "facts" in evidence; it is *evidence* of facts that is offered the court and received by it.

*Id.* (emphasis in original). In this regard, the facts resulting from the January auctions include the statistical data as well as other events, conditions or occurrences relating to this antitrust dispute. The evidence concerns the "species of proof" offered to establish these facts as they may be relevant to the dispute in controversy. Neither the facts nor the evidence which are the result of the auctions were in existence at the time of the trial.

The plaintiff in *Chilson* brought an action against his former employer, MTA, alleging he had been discharged in retaliation for his criticism of MTA's decision to contract with a certain entity. At trial, plaintiff attempted to prove the contract in question wasted public funds and was adverse to MTA's interests. The jury found plaintiff's comments were not the reason for plaintiff's discharge. *Id.* at 69. Subsequent to the jury's verdict, plaintiff filed a Rule 60(b)(2) motion claiming as newly discovered evidence an MTA internal audit reflecting excessive overpayments by MTA on the questioned contract. The trial judge denied plaintiff's motion "on the ground that the audit was not 'newly discovered evidence' within the meaning of the rule but was 'new' evidence." *Id.* at 70.

On appeal the Court acknowledged the established rule which requires newly discovered evidence to have been in existence

at the time of the trial. *Id., citing NLRB v. Jacob Decker & Sons,* 569 F.2d 357, 364 (5th Cir.1978). The court drew a somewhat strained distinction and held if the proffered "evidence" was the internal audit, it was not newly discovered because it did not exist at time of trial. However, if the evidence was the overpayment as revealed by the audit, "since the overpayment had already occurred," it was sufficient for Rule 60(b)(2) purposes. *Chilson,* 796 F.2d at 70. Interpreting the evidence as the already existing overpayment, the evidence of which was newly discovered, the Court reversed the decision of the District Court.

Hudson argues the power of the Legend trademark was a fact in existence at the time of trial and the subsequent auctions revealed facts and evidence to establish the fact of the power of the trademark. Judge Gee in his dissenting opinion set forth three scenarios concerning existence of facts and evidence:

> First, both the facts and the evidence of those facts exist before trial begins. This situation clearly falls within the ambit of Rule 60(b); a party may thus seek relief from judgment if he meets certain other requirements. Second, both facts and evidence come into being only after judgment is rendered. Unquestionably, a party here may not invoke Rule 60(b) under any circumstances, else we might endure never-ending trials. The third situation is present today: the fact (overpayment to HTC) allegedly occurred before trial, but the tendered evidence of the fact (the audit) came into existence only after judgment.

796 F.2d at 73 (Gee, J. dissenting) (footnote omitted). In this case, it may be argued there is a fourth scenario, taking Hudson's assertion at face value. That fourth scenario is the "fact" of the power of the trademark was in existence before the trial and facts and evidence to prove this power—the auction, statistical data and other events and conditions resulting from the

auctions—came into existence after the trial.

The theory offered to justify the granting of this Rule 60(b) motion flies in the face of the logic of the Rules as well as prior decisions. *See, e.g., Washington v. United States,* 214 F.2d 33 (9th Cir.), *cert. denied,* 348 U.S. 862, 75 S.Ct. 86, 99 L.Ed. 679 (1954). New facts cannot justify relitigation. Policy and logic mandate an end to litigation which in most cases prevent the reopening of a case because of after occurring events. *Id.* at 46. This is precisely the situation which is presented to the court. The evidence which is offered to support the request for a new trial reflects the events, conditions or occurrences surrounding the January auctions which "by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)" since "[n]o degree of diligence can discover evidence which is not in being at the required time of search...." *Chilson,* 796 F.2d at 73–74 (Gee, J. dissenting).

The reasoning expressed by the majority Circuit in *Chilson* will not be adopted here. To the contrary, I find the dissenting opinion in *Chilson* persuasive and applicable to the present situation. As the dissent points out, the language of Rule 60(b) refers to newly discovered evidence, not new evidence. "The distinction between 'new' and 'newly' discovered evidence ... is not one of great subtlety or abstruseness nor, as such, one unlikely to have occurred to the confectors of the rule." *Id.* at 73 (Gee, J. dissenting). If the drafters of the Rules had intended to permit new evidence the rule would have been worded accordingly. Rule 60(b) simply does not contemplate new evidence.[2]

In entertaining a motion to vacate based on newly discovered evidence, this court is cognizant of the policy considerations surrounding Rule 60. There is the compelling policy of finality, *see, e.g., Trinity County v. Andrus,* 77 F.R.D. 29, 30 (E.D.Cal.1977); *Chilson,* 796 F.2d at 74 (Gee, J. *dissent-*

---

**2.** Because the evidence offered by Hudson does not qualify as "newly discovered," the court need not address the second requirement of

Rule 60(b)(2): whether the evidence is "of such a nature that it would probably change the outcome." *Stridiron,* 698 F.2d at 207.

*ing* ), which must be weighed against the threat of preservation of injustice for the sake of consistency. *United States v. Walus*, 616 F.2d 283, 304 (7th Cir.1980). There is no preservation of an injustice in this matter. Counsel, especially counsel to Hudson, were aware of this potential problem and continued their pursuit of an expedited disposition of this matter. To ignore this voluntary choice is to ignore equity. It simply is not fair to permit a relitigation of this matter for the reasons asserted by Hudson. This is especially so since the proffered evidence is new, not newly discovered evidence. Moreover, to sanction Hudson's application is to signal the availability of such future applications by Legend or Hudson. Of course, this will only assure unending litigation and the demise of the concept of finality.

*Conclusion*

The grounds upon which Hudson bases its motion do not constitute newly discovered evidence as contemplated by Rule 60(b)(2), Fed.R.Civ.P.; accordingly, Hudson's motion will be denied. Legend is to submit an appropriate order.

